WILLIAM W. BROWN, Appellee, v. DAVIS COUNTY, Appellant.

**HIGHWAYS: Establishment—Ad Quod Damnum Proceedings Exclusive.**
1  *Ad quod damnum* proceedings, instituted under the statute (Sec. 1527-r1, Code Suppl. Supp., 1915, *et seq.*) by the public authorities *before* the property owner had instituted any action for his damages, afford the property owner his *exclusive* remedy, even though such proceedings are instituted long *after* the public authorities had (with the consent of the property owner) taken possession of the land.

**COUNTIES: Claims—Filing.** The filing with the board of supervisors
2  of a claim against a county is not the ''commencement of an action.''

**COUNTIES: Torts—Ad Quod Damnum Proceedings.** A property owner
3  who has allowed the public authorities to take possession of his land for highway purposes without the institution of condemnation proceedings and without compensation to him may not later maintain an action against the *county* on the theory that the public officials are *tort-feasors* and that the *county* is liable therefor. Especially is this true when the power of the public officials is limited to acquiring the land under certain specified highway funds.

*Appeal from Van Buren District Court.*—D. M. ANDERSON, Judge.

OCTOBER 16, 1923.

REHEARING DENIED JANUARY 18, 1924.

ACTION for damages for alleged trespass by the defendant, through its officers and agents, upon the premises of the plain-

tiff, in that it entered upon plaintiff's land and constructed a highway thereon. One of the defenses pleaded was that appropriate damages had been awarded to the plaintiff in certain condemnation proceedings under Section 1527-r1 *et seq.*, Supplemental Supplement, 1915, and that such proceedings were pending at the time that the plaintiff instituted his suit, and that they constituted a complete bar to the prosecution of this suit, in that they constitute plaintiff's sole statutory remedy. This defense was withdrawn by the court from the jury, and plaintiff's case was submitted as pleaded by him. There was a verdict for approximately $3,400. The defendant appeals.— *Reversed and remanded.*

*Buell McCash* and *Walker & McBeth,* for appellant.

*J. R. Jaques* and *H. B. Sloan,* for appellee.

EVANS, J.—Our disposition of this case involves a consideration of certain specific provisions of the statute, which may as well be set forth here, for convenience of reference, as follows:

"Sec. 1527-r1. Ten freeholders of any county by a petition to the board of supervisors of said county or the county engineer may, at any time, recommend the expediency and advisability of changing the course of any part of any road or stream within any county, in order to avoid unnecessarily expensive bridges, grades or railroad crossings, or to straighten any road, or to cut off dangerous corners on the highway or to widen any road above statutory width, or for the purpose of preventing the encroachment of a stream upon a public highway, specifying clearly the change recommended, and whether any part of any highway already established should be vacated and abandoned, and what part. The board may, thereupon, order the engineer to make a survey and report on such proposed change, and in order to comply with such order, the engineer shall have a right to enter upon the premises proposed to be taken and make said survey. If, from a consideration of the survey and report on such proposed change, the board deems the change advisable, it shall have power to buy such right of way and take conveyance thereof in the name of the county and

1. HIGHWAYS: establishment: *ad. quod damnum* proceedings exclusive.

to pay for the same out of either the county road or bridge fund or out of both of said funds, as may appear advisable.

"Sec. 1527-r2.  If, for any reason, the board is unable to acquire such right of way by agreement with the owner, the county auditor shall appoint three disinterested appraisers who shall appraise the damages sustained by the landowners through whose land said proposed right of way extends and who shall within ten days make return of their appraisement to the county auditor, and the board shall fix a day at such place in the county as it may determine, at which it will hear all objections to said change and at which time it will determine all damages to each claimant by reason of such proposed change.  Such hearing shall not be less than ten days after completed service on the owner. * * *

"Sec. 1527-r3.  Service shall be deemed complete on the date when personal service is made, or on the date of the last publication, as the case may be.  All objections to said change and all claim for damages by reason thereof, must be filed on or before the expiration of ten days from the date of completed service or the same will be waived.  Different dates may be fixed for hearing the objections and claims for damages of different owners. * * * At such final hearing, the board shall pass upon the objections filed.  If the objections or any of them be sustained, the proceeding to effect the change shall be dismissed. If the objections be overruled, the board shall then proceed to a determination of the damages to be awarded to each claimant who has filed such claim.  If the amount of damages so awarded are, in the opinion of the board, excessive, the proceedings shall be dismissed.  If such damages, in the opinion of the board, be not excessive, the board may, by proper order, establish such proposed change in the road or stream, as the case may be, and pay such damages as in case of right of way secured by agreement. * * * The damages thus awarded shall be paid for out of the county road or bridge fund or out of both of said funds. Claimants for damages may appeal to the district court from the award of damages, in the manner and time for taking appeals from the establishment of highways generally.  The acceptance at any time of the amount awarded shall constitute a waiver of the right to appeal.  If possession of the right of way

is not taken and improved prior to the determination of the amount of damages on appeal, the board may, on the appeal being determined, dismiss the proceeding to effect the change, if, in the opinion of the board, the damages finally awarded are excessive.''

The proceedings under consideration here involved the relocation or alteration of a highway already existing upon and through the plaintiff's premises. The proposed road was what is called a Federal aid project, No. 50, being a road running north and south between Bloomfield and Ottumwa. The project came under the consideration of the board of supervisors in 1919, at which time an effort was made to purchase from the appropriate landowners the necessary right of way for relocation. Purchases were made from all landowners except the plaintiff. His original attitude was to decline making or agreeing to any price in advance of the construction of the improvement. There was evidence for the defendant that plaintiff said, in substance, that he would defer naming any amount until after the road was constructed. Though he denied qualifiedly that he made such statement to the board, he testified that he made some such statement to his own attorney, who aided in the negotiations. These negotiations extended into 1920. In the latter half of 1920, the board, being united in their approval of the project, but without appropriate legal procedure, let the contracts for the construction of the highway. The contract for the construction of the culverts was let to one contractor, and that for the construction of the grade was let to another. The first contractor performed his contract in the fall of 1920, and the second performed his in the summer of 1921. The first entry upon plaintiff's premises was by these contractors. Each of them entered pursuant to a contract with the plaintiff for camping privileges upon the land, for the purpose of carrying out the work. The plaintiff also contracted to sell sand and gravel to the first contractor, for the purpose of the construction of the culverts. Pursuant to his contract, he delivered the material. The occupancy of these contractors covered many months, during which time the plaintiff made no protest or claim that their occupancy was against his will, though he lived upon the premises and was in daily contact with the

work which was going on.  No other implication is permissible
from his conduct than that the entry upon and occupancy of
his premises was with his consent.  It is not claimed, however,
that he thereby waived his right to compensation. ·

The plaintiff's premises consist of three separate tracts of
land, comprising respectively 60 acres, 40 acres, and 45 acres.
The highway in question passes from south to north across the
60-acre tract.  The old highway crossed the same tract, but ex-
tended from his south line in a northwesterly direction.  The
60-acre tract is rectangular in form, with its larger dimension
from east to west.  Cornering with it at its northeast corner is
the 40-acre tract.  Separate from it at a distance of 40 or 50
rods, and northwest therefrom, is the 45-acre tract.  The build-
ing improvements of the farm are at the northwest corner of the
60-acre tract.  The new road passes east of the buildings.  The
old road passed west thereof.  The farm is rough in its topog-
raphy, and is traversed by Soap Creek, a tortuous stream. The
construction of the new highway consisted of culverts and fills
and cuts.  The construction upon plaintiff's land was completed
in early August, 1921.  Up to this time, no formal record action
had ever been taken in the direction of condemnation proceed-
ings.  Neither had anything transpired, up to this time, to indi-
cate that it would be impossible to reach an agreement with the
plaintiff for the purchase of the right of way.  On October 4,
1921, the plaintiff filed with the board his claim, pursuant to
which he later brought this action.  Such claim was for $7,500.
Thereupon, and on October 18th, the board set in motion for
the first time the statutory proceedings for condemnation.  The
engineer filed his recommendation and survey.  The board made
a further attempt at an agreement of purchase.  This failing,
appraisers were appointed by the auditor, who on October 20th
returned their appraisement of plaintiff's damages at $300.  On
the same date, appropriate notice was served upon the plaintiff,
fixing the date of hearing on October 31st.  On October 29th,
the plaintiff began this suit.  On October 31st, the plaintiff ap-
peared before the board, to protest its jurisdiction.  The board
approved the appraisal and allowed the amount thereof.  The
plaintiff thereafter ignored the proceedings.  Upon these facts,
it is the contention of the appellant that the plaintiff was bound

to litigate his claim in the statutory proceedings, and that no other remedy was available to him. The trial court ruled against the appellant on this contention, and we proceed to a consideration of the principal reasons which induced the ruling of the learned trial judge, and which are now relied on in support thereof.

I. These reasons, stated briefly and in substance, are that the statutory remedy is inadequate; that it gives to the landowner no right of initiative to institute the condemnation proceedings; that it gives to the board of supervisors the right to control the proceedings and to dismiss them at any time, and thereby to abandon its project; that the defendant, though having the right to institute the statutory proceedings, had not done so *prior* to the commencement of plaintiff's suit, and that it could not defeat the plaintiff's suit by resort to such proceedings *thereafter*. These reasons include questions of fact upon the record, as well as questions of law, which latter include a construction of the statute which we have set forth above.

An important fact upon the record is that plaintiff's suit had *not been brought before* the institution of condemnation proceedings under the statute by the board. The condemnation proceedings were formally begun, and jurisdiction fully obtained over the plaintiff on October 20th. The suit was begun on October 29th. The appellee does not dispute the general rule that, where the statute creates a right and provides a remedy, such remedy is ,exclusive; nor does it dispute that such general rule is applicable to condemnation proceedings where the remedy provided is equally available to both parties. He does contend that, where the party having the initiative fails to proceed, the other party is entitled to select his remedy and to proceed accordingly.

Turning to the statute before us, it is quite informal. It does contemplate primarily that the proceedings there described shall be carried out in *advance* of entering upon the improvement. It has been generally held by the courts, however, that, where a party exercising the right of eminent domain enters into possession of the property of the landowner in advance of condemnation proceedings, he is not thereby precluded from instituting such proceedings thereafter. This general rule is recog-

nized in the statute, where it withholds from the defendant county the right to dismiss and abandon its proceedings *after* it has taken possession of the land. This statute clearly contemplates that, at some stage in the proceeding, the landowner must state his claim for damages. If the landowner claims more than the appraisers allowed, the board of supervisors must pass upon such claim. If the appraisers allow the claim, or if the amount fixed by the appraisers is acceptable to the landowner, the board cannot reduce it. *Daniel v. Clarke County*, 194 Iowa 601. It must either pay the appraisal or abandon the proceeding. If it has taken possession of the property,

2. COUNTIES: claims: filing.       it *cannot* abandon the proceeding. It has no right of appeal from the appraisal. The landowner has a right of appeal to the district court, and this is his specific statutory remedy. We perceive no reason for saying that it is not adequate. We have no occasion to determine in this case what right of initiative the landowner has, because the initiative had already been taken by the county, prior to suit. It will be noted that the plaintiff filed its claim on October 4th. This date antedated the condemnation proceedings. It was the view of the trial court that the filing of this claim by the plaintiff in advance of the initiating of the condemnation proceedings by the defendant was equivalent, in its effect, to the beginning of a suit. No authorities are cited to us in support of this contention. We are unable to accede to it. The presentation of a claim by the plaintiff was consistent with the possible necessity for condemnation proceedings in the event that an agreement could not be reached between the parties, as contemplated by the statute. An attempt at agreement was an appropriate response to this claim. In view of the failure of agreement, the institution of condemnation proceedings to litigate the controversy was just as responsive. If, after the presentation of the claim, the board had then refused or failed to institute condemnation proceedings, a somewhat different question would be presented. The board was bound to institute condemnation proceedings, in order to hold possession by any legal right. A suit in trespass would settle nothing but the damages sustained by reason of the occupancy up to the time of trial. The continued occupancy of the highway thereafter without condemnation pro-

ceedings would still be unlawful. It is true that in this case the plaintiff, upon the trial, entered upon the record his consent that judgment in this suit should be final and conclusive as to the right of the public to the highway, and waived all right for future action for successive damages. But this was purely gratuitous. In his petition, he sued only for trespass, and indeed expressly reserved therein to himself the right of future actions. On the trial, he was confronted with a dilemma, and his offer was made as a means of escape therefrom. The case was submitted upon the basis of such offer. Its practical effect was to convert an action of trespass into an action for original damages for permanent nuisance. We mention this only as an indication of how much more complete and adequate than the remedy of action for trespass was the statutory proceeding wherein the full rights of both parties would be adjudicated by the judgment.

For a statement of the rule which confines the landowner to the statutory remedy in all cases where the condemning party has actually instituted the condemnation proceeding, even though the condemning party has the exclusive right to institute such proceeding, see the authorities cited in 2 Nichols on Eminent Domain (2d Ed.) 1239, 1240; 20 Corpus Juris 517.

We hold, therefore, at this point, that the filing of his claim by the plaintiff on October 4th, though a necessary condition precedent to a suit against the county, was not the beginning of the suit; that plaintiff's suit was not begun until October 29th; that condemnation proceedings had been appropriately begun prior thereto; that the board had obtained complete jurisdiction therein not later than October 20th; that such proceedings were pending at the time of the bringing of plaintiff's suit; that the plaintiff had a complete and adequate remedy in such proceedings; and that he was not entitled to bring or to maintain his present action.

II. There is another grave obstacle which confronts the plaintiff in this case. The rule that the neglect of a condemning party to institute condemnation proceedings gives to the land-

**3. COUNTIES: torts: *ad quod damnum* proceedings.** owner the right of election to bring his action at law as for a tort does not apply to a *county.* As we have often held, a county is not a corpo-

ration, in the ordinary sense. It is a political body or subdivision, and comes into being as a quasi corporation by statutory enactment. It may sue and be suable because, and only because, of statutory permission. It is not liable in damages for the torts of its officials. This was distinctly held in *Wenck v. Carroll County*, 140 Iowa 558; *Packard v. Voltz*, 94 Iowa 277. The previous cases are set forth in the cited cases. This question has been dealt with by us in a long line of ''defective bridge'' cases, the last of which is *Post v. Davis County*, 196 Iowa 183.

The board of supervisors had no legal authority to obligate the county in any manner in the acquisition of additional land for the alteration of a road, except pursuant to the statutory provision above quoted. They had no authority to pay for any acquisition except out of the road and bridge funds. The amount which they were authorized to pay in a given case could be legally determined only in the method pointed out by the statute. All this the plaintiff presumably knew. When he consented to the entry upon his land by the contractors, he did not thereby waive his appropriate compensation. Neither could he take any advantage of such entry to put the county in the attitude of a tort-feasor. The plaintiff expected just compensation from the county. The board had power, under the statute, to render the county liable for such compensation. It had no power to render the county liable for its torts. In consenting to the entry, the plaintiff must be deemed to have relied upon the statute as the only method whereby the board of supervisors could take his land for highway purposes or could render the county liable to pay the compensation therefor.

We must hold, therefore, that the plaintiff's action should have been dismissed.—*Reversed and remanded.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.