**OTTER TAIL POWER COMPANY, a corporation, Plaintiff and Appellee,**

v.

**Arnie DEMCHUK and Joyce Demchuk, Defendants and Appellants.**

**OTTER TAIL POWER COMPANY, a corporation, Plaintiff and Appellee,**

v.

**Myron Lee NORDLIE and Karen Nordlie, Defendants and Appellants.**

**OTTER TAIL POWER COMPANY, a corporation, Plaintiff and Appellee,**

v.

**Walter M. ORTMAN and Lois E. Ortman, Herbert M. Ortman and Ethel M. Ortman, Frieda H. Ortman, Milbert A. Ortman and Laura L. Ortman, and Lucille Ortman, Defendants and Appellants.**

Civ. Nos. 10054, 10054A, 10055, 10055A, 10056, 10056A.

Supreme Court of North Dakota.

Jan. 13, 1982.

Thomas S. Donoho, Fergus Falls, Minn., and Pearce, Anderson & Durick, Bismarck, for plaintiff and appellee; argued by William P. Pearce, Bismarck.

Vogel Law Firm, Mandan, for defendants and appellants; argued by Jos. A. Vogel, Jr., Mandan.

PEDERSON, Justice.

The two appeals which we have consolidated raise eminent domain questions which are unsettled in this state. If we are to reach those questions, it is necessary to bypass a procedural jungle which results from the consolidation in the trial court of three apparently representative cases from hundreds of cases filed, or to be filed, in three different counties. The two separate appeals are from two separate interlocutory orders which did not include a Rule 54(b), NDRCivP, determination that there is no just reason for delay nor an express direction for the entry of judgment. The motion to stay proceedings pending the disposition of the appeals made to the trial court was denied. This court granted a motion to stay and to consolidate the two appeals. Otter Tail has moved to dismiss one of the appeals and, in its argument on the merits, urges us to dismiss both appeals. We heard arguments on all motions in September 1981, and have made tentative disposition thereof. We have now heard the appeals on their merits and we dismiss both appeals and remand for trials on the question of damages.

In the absence of a trial court Rule 54(b) order, the determinations, which are the subjects of the two property-owner appeals, are "subject to revision at any time" by the trial court. As the trials proceed on the issue of damages, the court will likely be confronted with opportunities to consider revision of its interlocutory determinations. It would be in the interest of judicial economy for this court to make some comments that might assist the trial court and, possibly, save the need for another appeal after final judgment is entered.

■ We would not encourage trial courts to make Rule 54(b) orders when there are reasons to believe that it may be discovered during trial that a revision is advisable. Unless there are extraordinary circumstances, this court should not intervene in the process of amending complaints which, under some circumstances, should be permitted even up to the entry of the final judgment. Orders relating to the amendment of pleadings and orders denying motions to dismiss an action are not appealable. *Strecker v. Railson*, 19 N.D. 677, 125 N.W. 560 (1910).

The property owners here argue inconsistently that the certificate from the Public Service Commission granted Otter Tail authority, under § 49–22–07, NDCC, limited to a transmission line capacity of 230 kilovolts. On the other hand, they contend that Otter Tail should be required to seek an easement for a 230/345 kilovolt transmission line because the facility planned to be constructed will, in many respects, have the capacity to carry 345 kilovolts.

■ Although the Otter Tail complaints originally sought a general transmission line easement that would have permitted future "increase in capacity," the complaints have now been amended to a restricted easement. Unless the complaints are again amended, increase in voltage will not be permitted by the easement acquired. The judgment should so provide, and rulings on the admission of evidence should be in accordance therewith. The admissibility of opinion testimony as to how the present market value of property is affected by potential future upgrading of the line will depend upon many factors upon which we cannot speculate. The jury, of course, will be instructed that increase of voltage will not be permitted without the acquisition of additional PSC authority and additional easements from the property owners.

Reminder of some of the basic rules that govern condemnation proceedings and appeals therefrom may be helpful:

■ The right of eminent domain may be exercised for "power transmission lines." Section 32–15–02(4), NDCC; *Otter Tail*

Power Company v. Malme, 92 N.W.2d 514 (N.D.1958). The mere fact that a projected use falls in one of the categories of § 32–15–02, NDCC, is not enough to render it a public use within the meaning of the state constitution. Where the existence of a public use is put in issue, its determination is dependent upon the facts and circumstances. Square Butte Elec. Coop. v. Hilken, 244 N.W.2d 519 (N.D.1976). Without a court order, an easement only, not a fee simple, may be taken for a power transmission line. Section 32–15–03(2), NDCC. Before property may be taken it must be determined by the court, without a jury, that the use contemplated is a use authorized by law, and that the interest in property being taken is necessary to that use. Section 32–15–05(1) and (2), NDCC; Oakes Municipal Airport Auth. v. Wiese, 265 N.W.2d 697 (N.D.1978). Whenever fact issues are tried to the court without a jury, the court is required to make special findings and those findings will not be set aside on appeal unless they are clearly erroneous. Rule 52(a), NDRCivP.

■ A complaint in eminent domain proceedings must, with accuracy and certainty, describe and include a map of the right-of-way sought as to (1) location, (2) general route, (3) termini, and (4) legal description of each piece of land sought. Section 32–15–18 (4) and (5), NDCC; Otter Tail Power Co. v. Von Bank, 72 N.D. 497, 8 N.W.2d 599, 145 A.L.R. 1343 (1943); 7 A.L.R.2d 381.

■ An interlocutory order which involves the merits of an action, or some part thereof, is separately appealable to this court. Section 28–27–02(5), NDCC; Skoog v. City of Grand Forks, 301 N.W.2d 404 (N.D.1981); Northwest Airlines v. State, Through Bd. of Equal., 244 N.W.2d 708 (N.D.1976); City of Bismarck v. Muhlhauser, 234 N.W.2d 1 (N.D.1975).

■ If, during the consideration by this court of any appeal, it becomes apparent that there are issues in the case that have not been tried or have not been determined by the trial court, and this court determines that it is necessary or desirable that such issue be first tried and determined, this court may remand the case to the trial court for disposition of the undetermined matters. Rule 35(b), NDRAppP (source: § 28–27–29, NDCC); Center State Bank, Inc. v. State Bank. Bd., 276 N.W.2d 132 (N.D.1979), and 283 N.W.2d 183 (N.D.1979).

Although interlocutory orders which involve the merits of an action have been separately appealable since territorial days [§ 23(4), Ch. 20, Laws of Dakota Territory, 1887)], in 1927 the Legislative Assembly, in enacting Ch. 214, S.L. 1927, concluded that the appeal of any matter, other than a final judgment, should be subject to remand by this court if it determines that a final judgment is necessary or desirable. Considering the growth in the caseload confronting this court, it should be obvious that a final judgment should be required, except in the most unusual and extraordinary circumstances. The 1927 enactment became a part of § 28–27–29, NDCC, and ultimately, Rule 35, NDRAppP.

In City of Williston v. Beede, 289 N.W.2d 235 (N.D.1980), an application for the exercise of this court's superintending powers, we reiterated what this court had earlier said about the trial court's duty, after determining use and necessity matters in eminent domain, to proceed with the assessment of damages as rapidly as the procedure will permit. State v. Teigen, 80 N.W.2d 110 (N.D.1956). We said:

"The court in Teigen expressed reservations on the ability to appeal the separate judgment on the necessity of taking without first completing the trial on compensation or damages. We are confident that with the adoption of Rule 54(b) [NDRCivP], the appealability issue has become considerably more doubtful." City of Williston v. Beede, 289 N.W.2d at 237.

That is not to say that, as a part of the appeal from the "final" judgment, a judicial review of the findings of fact and conclusions of law which support the trial court's determination upholding the condemnor's position on use and necessity will not be made by this court. As in any other fact

issue review, we would apply Rule 52(a), NDRCivP, to determine whether or not the findings of fact on questions of use and necessity are clearly erroneous. Because § 28–27–32, NDCC, was repealed, trials de novo on fact questions are not ordinarily available.

When the statute which authorizes a utility company to exercise the power of eminent domain describes only generally the interest which can be taken as a "power transmission line" easement, it is generally construed that no greater interest in the property can be taken, over the objection of the property owner, than the particular use requires. *See e.g.,* 26 Am.Jur.2d Eminent Domain § 133. Although no greater interest may be acquired than is necessary within the statutory limits, the condemnor has discretion in determining what is needed. See 29A C.J.S. Eminent Domain § 92, and *Falkner v. Northern States Power Co.,* 75 Wis.2d 116, 248 N.W.2d 885 (1977).

In the case of *Minnkota Power Coop. v. Lake Shure Prop.,* 295 N.W.2d 122 (N.D. 1980), where Minnkota had acquired a general easement for a power line which said nothing about the maximum voltage that the line would carry, we said that that utility company had "the right to uprate the line to a reasonable degree." We also said that the trial court's finding of fact that increasing voltage from 230 kilovolts to 345 kilovolts was, under a general easement, reasonable, and was not clearly erroneous. Relying on the Annotation in 3 A.L.R.3d at 1260, we said that the holder of a general easement may avail himself of all modern inventions and all improvements reasonably necessary, consistent with the purpose for which the easement was granted. It naturally follows that these rules do not apply when the easement contains specific limitations. We have used similar rationale in describing future uses of general highway easements. *See King v. Stark County,* 66 N.D. 467, 266 N.W. 654 (1936), and 67 N.D. 260, 271 N.W. 771 (1937); *Hamilton v. City of Bismarck,* 71 N.D. 321, 300 N.W. 631 (1941).

There is a distinction between mere unenforceable promissory statements by a condemnor as to the intended use of the property taken and binding stipulations, reservations or limitations. See Annotation, 7 A.L.R.2d 364, at page 392. In this case the original Otter Tail complaint contained inconsistent language which simultaneously appeared to be limitations on future use as well as specific authority to cover future "increase in capacity." Under those circumstances, the property owners were justified in their concern. Otter Tail's amended complaint eliminated the reference to "increase in capacity" and inserted an enforceable limitation on line voltage to 230 kilovolts.

There are fine lines of distinction between unlawful takings for future needs and lawful takings for present needs, with authority to make reasonable improvements as necessary in the future and consistent with the present purpose. *See* Annotation in 80 A.L.R.3d 1085.

We conclude that a condemnor of right-of-way for a power-line easement may ordinarily elect to acquire a general easement or, by appropriate words of limitation in the complaint and in the judgment entered, restrict the easement to the transmission of specific voltage. If there is no voltage limitation elected by the condemnor in its complaint, the evidence cannot be restricted by any promissory statements by the condemnor. If there is a binding election by the condemnor to a limitation of the voltage, the evidence, if objected to, should be limited accordingly. Property owners' rights will be protected by an appropriate explicit limitation in the judgment.

The appeals are dismissed. No costs are allowed on the appeals. The matter is remanded for proceedings consistent herewith.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.