Dr. Georgio A. PICCAGLI, Plaintiff and Appellant,

v.

NORTH DAKOTA STATE HEALTH DEPARTMENT, Defendant and Appellee.

Civ. No. 10160.

Supreme Court of North Dakota.

May 20, 1982.

Phillip J. Brown, Bismarck, for plaintiff and appellant.

Kathryn L. Dietz and Nancy K. Hoff, Asst. Attys. Gen., Bismarck, for defendant and appellee; argued by Dietz.

VANDE WALLE, Justice.

Georgio A. Piccagli appealed from the order of the district court of Burleigh County granting summary judgment dismissing Piccagli's lawsuit against the North Dakota State Department of Health (hereinafter "Health Department"). The Health Department moved to dismiss the appeal. We grant the motion to dismiss the appeal.

We have recently decided that an appeal must be dismissed when it is from an order for summary judgment and not the judgment itself. *First National Bank of Hettinger v. Dangerud*, 316 N.W.2d 102 (N.D. 1982); *Simpler v. Lowrey*, 316 N.W.2d 330 (N.D.1982). *Dangerud* and *Simpler*, like the instant case, involve appeals from orders for summary judgment. In *Dangerud* and the instant case judgment was entered before the appeal was filed, while in *Simpler* a judgment had not been entered prior to our dismissal of the appeal. In *Dangerud* we held that "[a]n order for entry of summary judgment must be treated the same as an order for judgment; such order is an intermediate order and is not appeala-

ble. *Gebeke v. Arthur Mercantile Company*, 138 N.W.2d 796 (N.D.1965). Where an appeal was taken from orders for entry of summary judgment but no appeal was taken from the judgment in favor of the defendant, we are without jurisdiction to proceed further in the matter." *Dangerud, supra*, 316 N.W.2d at 104. Prior to *Dangerud* we had allowed appeals to be taken from orders granting or denying judgment. "We allowed the appeals in those instances because of the seeming importance of reaching the merits of those cases. *Such a policy is no longer practicable*, ... *Gebeke v. Arthur Mercantile Company, supra*, is now the rule." [Emphasis added.] *Dangerud*, 316 N.W.2d at 104.

Subsequent to *Dangerud* we decided *Simpler*. In dismissing the appeal in *Simpler* we cited *Dangerud*, saying that "we held that an order granting summary judgment is an intermediate order and is not appealable." 316 N.W.2d at 333.

Piccagli argues that in circumstances such as his, where a judgment was entered, filed, and docketed the same day as the order for summary judgment and the judgment and docket sheet were transmitted to the clerk of the Supreme Court following the notice of appeal, "there is no real question as to the jurisdiction of the Supreme Court to entertain the appeal, but rather there is only the exceedingly technical question of the wording of the Appellant's Notice of Appeal." *Gebeke, Dangerud*, and *Simpler*, however, do raise and answer the question of the jurisdiction of this court to hear the appeal.

■ Piccagli eloquently argues that the rule of *Gebeke, Dangerud*, and *Simpler* is wrong because of the harsh result of such a strict application of a technical requirement. That, however, is the inevitable consequence of jurisdictional rules. Similarly harsh results occur when an action is brought after a statute of limitation has expired. We decline to depart from the rule so recently restated in *Dangerud* and *Simpler*.

Piccagli raises two additional arguments as reasons why the appeal should not be dismissed, even though he appeals from the order for summary judgment instead of the summary judgment. The first is that we have jurisdiction to hear the appeal due to the authority granted in Section 28–27–02(5), N.D.C.C.:

"The following orders when made by the court may be carried to the supreme court:

.      .      .      .      .

"5. An order which involves the merits of an action or some part thereof;
..."

Piccagli argues that because the order he appealed from granted summary judgment to the Health Department and dismissed his claim, it was an order which involved the merits of his action. Piccagli concedes that if judgment has not been entered no appeal can be taken from an order for summary judgment. However, before entry of judgment the order for summary judgment has no effect. As this court decided in *Gebeke*, an order for summary judgment is an order "requiring the subsequent entry of judgment to give it effect." 138 N.W.2d at 798. Once judgment has been entered it is the judgment which is effective and a proper appeal is from the judgment. An order under Section 28–27–02(5) is not appealable "unless, in effect it finally determines some substantive legal right of appellant." *Fritz v. Hassan*, 316 N.W.2d 797, 799 (N.D.1982).[1] See *Bismarck Pub. Sch. v. Ritterbush Assoc.*, 313 N.W.2d 712, 714 (N.D.1981); *Northwest Airlines v. State, Through Bd. of Equal.*, 244 N.W.2d 708, 710 (N.D.1976); *Schaff v. Kennelly*, 69 N.W.2d 777, 780 (N.D.1955).

1. *Fritz v. Hassan*, 316 N.W.2d 797 (N.D.1982), was decided shortly after our decisions in *Dangerud*, 316 N.W.2d 102 (N.D.1982), and *Simpler*, 316 N.W.2d 330 (N.D.1982). The *Fritz* decision contains language which appears to indicate that an order granting a claimant's motion for a default judgment would be appealable because it involves the merits of the case. However, that language is used to contrast an order for judgment with an order denying a claimant's motion for default judgment and was not intended to imply that an order for judgment is appealable nor that the recent decisions in *Dangerud* and *Simpler* were overruled.

We recently permitted an appeal from an order granting partial summary judgment. That decision does not conflict with what we have said here. In *Sheets v. Letnes, Marshall & Fiedler, Ltd.*, 311 N.W.2d 175 (N.D.1982), the trial court granted Sheets's motion for summary judgment on the issue of liability, leaving for trial the issue of damages. The Letnes firm requested a Rule 54(b), N.D.R.Civ.P., order from the trial court but it was denied. Rule 54(b) allows the trial court to "direct entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay . . ." The Letnes firm then appealed from the order granting partial summary judgment. Letnes's alternative was to await the outcome on the issue of damages and then appeal the entire judgment. We decided that the effect of the partial summary judgment operated "in a manner similar to that of an order striking an affirmative defense not provable under the remaining allegations which we have held to be appealable. [Citations omitted.]" *Sheets*, 311 N.W.2d at 179. We held that "the district court order granting summary judgment on the issue of liability affects the substantial legal rights of the Letnes firm and therefore is appealable." *Sheets*, 311 N.W.2d at 179. Although both the instant case and the *Sheets* case involve appeals from orders for summary judgment, the *Sheets* case is significantly different in its factual setting and in the timing and effect of the order for partial summary judgment to be distinguishable. In *Sheets* the order for partial summary judgment and the subsequent denial of a Rule 54(b) motion did have an effect upon the merits. It determined liability, prohibited an appeal on the issue of liability, and restricted the trial to the issue of damages. The order for summary judgment in the instant case has no such effect.

Piccagli also argues that Rule 77(d), N.D. R.Civ.P., should prevent this court from dismissing the appeal because he never has been served with notice of entry of judgment by the Health Department.[2] The explanatory note to Rule 77 states that "the prevailing party has 10 days after entry of judgment in which to serve the adverse party with notice of entry of judgment. The 60-day time period for appeal by the adverse party does not start until notice of entry of judgment is served [see Rule 4(a), NDRAppP]." Rule 77(d), however, is a procedural rule and not jurisdictional. The trial judge served both parties with the order for summary judgment, the summary judgment, and notice of entry of judgment. Piccagli cannot argue that he did not know that summary judgment had been entered. He learned of it through the same letter from the trial judge which he relied upon to appeal from the order for summary judgment. Because we decide that Rule 77(d) is procedural we are unpersuaded by Piccagli's argument. A different issue would be before us if Piccagli had not received notice of the entry of judgment from either the trial judge or the prevailing party.

■ As a result of *Dangerud*, we have returned to an interpretation which is almost as old as the State itself: An order for summary judgment or for judgment is not appealable.[3] We recognize that this interpretation may lead to harsh results. We do not dispute that other State courts when faced with exactly the same issue have arrived at an opposite conclusion. An article in the North Dakota Law Review which discussed the predecessor to Section 28–27–02 stated:

"A few of the decisions [which held nonappealable various orders as not involving the merits of the action] illustrate the point that the distinction between orders affecting a procedural right and those

**2.** Rule 77(d), N.D.R.Civ.P., provides:

"(d) *Notice of Entry of Judgment Served.* Within 10 days after entry of judgment in an action in which an appearance has been made, notice of such entry, together with a copy of such judgment or a general descrip-

tion of the nature and amount of relief and damages thereby granted, shall be served by the prevailing party upon the adverse party."

**3.** *In re Eaton*, 7 N.D. 269, 273, 74 N.W. 870, 871 (1898).

affecting a substantive right is principally one of degree, and difficult to make in close cases. For example, the familiar rule that one cannot appeal from an order for judgment but only from the entry of the judgment itself presents a rather close issue under [Section 28–2702(5), N.D.R.C. 1943] ... Certainly a strong argument could be made for the proposition that an order for judgment is an order which in effect determines the action. It is the last formal order which the trial judge himself makes. Thus, there would be a certain amount of logic to the position that the order is one which involves the merits of the action, a point borne out by the fact that an order for judgment is considered appealable when it is made in a special proceeding. [*Oliver v. Wilson*, 8 N.D. 590, 80 N.W. 757 (1899) (order granting writ of mandamus).] The rule that one cannot appeal from an order for judgment simply reflects the court's judgment that the order is basically a procedural step." [Footnotes omitted.] NOTE, *Appeal and Error—Decisions Reviewable—The "Reviewable Orders" Statute of North Dakota*, 28 N.D.L.Rev. 186, 200 (1952).

Originally this appeal involved only the trial court's grant of summary judgment. Both Piccagli and the Health Department filed briefs on the merits. Later, the Health Department filed a motion to dismiss based upon our decision in *Dangerud*. Because we recognize that our decisions prior to *Dangerud* were not always consistent; that the decision in *Dangerud* was issued while this appeal was pending; and that both parties have briefed and argued the merits we will comment upon them. *Burich v. Burich*, 314 N.W.2d 82 (N.D.1981); *State v. Gasser*, 306 N.W.2d 205 (N.D.1981).

On December 31, 1980, Piccagli and Joan G. Babbott, State Health Officer, signed the following:

"MEMORANDUM OF AGREEMENT

"This agreement is entered into on this 31st day of December, 1980, by the North Dakota State Department of Health and Giorgio Piccagli:

"1) The Department of Health has agreed to place Giorgio Piccagli on administrative leave with pay for the period January 1, 1981, to February 28, 1981.

"2) Dr. Piccagli has resigned his position with the North Dakota Department of Health effective February 28, 1981.

"In the event that due to unforeseen circumstances it should become impossible for the Department to deliver on its agreement to maintain Dr. Piccagli on a payroll status through February 28, 1981, the Department hereby agrees to contract with Dr. Piccagli for the product defined below.

"Upon delivery of the product defined below, the Department agrees to remit to Dr. Piccagli an amount equal to his monthly salary pro-rated to February 28, 1981.

"The product is hereby defined as:

"1) A list of changes necessary to improve the State Health Plan. This list will focus primarily on changes necessary in the chapters on policy analysis, health status, and health system. This portion of the product will include suggestions for accomplishing the suggested changes.

"2) A list of suggestions for generating and improving the information and data base necessary for sound planning decisions, both within and outside the institutional setting.

"3) A report on problems encountered in implementing the health planning and development program in North Dakota, including suggestions on how to avoid those in the future.

"[SIGNED] GIORGIO A. PICCAGLI
        Giorgio A. Piccagli, Ph.D.

"[SIGNED] JOAN G. BABBOTT, M.D.
        Joan G. Babbott, State
        Health Officer"

On February 13, 1981, the Acting State Health Officer sent Piccagli a letter informing him that Governor Olson had instructed

that no further payments be made to Piccagli under the December 31, 1980, agreement. On June 22, 1981, Piccagli commenced this action.

We agree with the trial court's conclusion that the first part of the contract constituted severance pay, which is prohibited by Section 54–14–04.3, N.D.C.C., and that Piccagli had not performed the second portion of the contract. Both parties have argued various peripheral issues in addition to the legality of the contract. We do not comment upon them nor do we express an opinion as to whether or not Piccagli might have other causes of action against the individuals involved in the negotiation of this contract. We address only the central issue of enforceability of the contract.

Section 54–14–04.3 provides:

"1. For the purposes of this section, 'severance pay' means compensation received, upon termination of employment, for reasons primarily beyond the control of the state employee or officer, for the purpose of assuring an employee or officer funds to depend upon while another job is sought. Severance pay does not include payments made to a terminated employee or officer for accrued annual or sick leave, or compensatory leave, where such payments are authorized.

"2. No state employee or officer shall be entitled to severance pay upon termination of employment if the employee or officer quit employment voluntarily or resigned of his or her accord, or was dismissed for gross neglect of duty, gross misconduct while on duty, or for other good cause. A state employee or officer

may be entitled to severance pay if the employee or officer was dismissed from employment because of reductions in staff or temporary or permanent layoffs, or for other reasons primarily beyond the control of the employee or officer. This section shall not be construed to affect the rights of employees or officers in salary or wage disputes which are the subject of out-of-court settlements."

The history of this legislation, ch. 543, 1979 N.D.Sess.Laws, reveals that the purpose was to end the practice of buying resignations from State employees. The sponsor of the legislation cited two examples in his testimony before the House and Senate committees which considered the proposal. In each example a State employee was given his regular salary for a period of time during which he performed no services and at the end of which time he resigned. House State & Federal Government Committee minutes, January 31, 1979, and Senate State & Federal Government Committee minutes, February 27, 1979.[4] The first portion of the contract between Piccagli and the Health Department attempts to accomplish the same thing. As a result, the portion of the contract which attempts to provide severance pay is contrary to an express provision of law and therefore is unlawful. Sec. 9–08–01(1), N.D.C.C. The unlawful part of the contract is void. Sec. 9–04–04, N.D.C.C.

The trial court concluded that although the second part of the contract is valid, it had not been performed. The trial court also concluded that although the contract is vague as to when the product was to be delivered, and the court would assume de-

4. Thus the minutes of the House State and Federal Government Committee which heard House Bill 1541 (Chapter 543, 1979 N.D.Sess. Laws), subsequently codified as Section 54–14–04.3, N.D.C.C., summarize the statements of the sponsor of the bill, Representative Fleming, with respect to the State employees to whom he was referring as follows:

"Felt he should have been dismissed instead of getting one year paid vacation. So we had two people on the payroll for one job. Don't

want to see this happen again. This also happened . . . this summer. I was very irate when the individual received three weeks' pay for not working. Seems to me the administrators are taking the easy way out. Always easier to get resignations instead of dismissals. If running your own business you wouldn't give out severance pay. It seems to be easier when dealing with state money."

livery within a reasonable time, the product never was delivered.

■ The position adopted by the trial court concerning the second portion of the contract was argued in the alternative by the Health Department. The Health Department's primary position is that the second part of the contract was merely another way of providing for severance pay and thus it, too, had an illegal objective and should be void. The second part is preceded by language which states that if the first part is determined to be void, the Health Department agrees to contract with Piccagli for services. We are persuaded by the Health Department's argument that when there is but one object of a contract and that object is unlawful, the entire contract is void. Sec. 9–04–03, N.D.C.C. We believe that the object of the contract is apparent on its face, i.e., one way or another Piccagli's resignation was to be purchased with severance pay. Both parts of the contract are an attempt to circumvent Section 54–14–04.3, N.D.C.C. Because the contract is invalid on its face, we agree with the trial court that summary judgment is appropriate. Rule 56, N.D.R.Civ.P.

Piccagli argues that the public policy behind Section 54–14–04.3 would best be served by enforcing this agreement. Piccagli suggests that the public policy advanced by this legislation and the entire Merit System is to assure covered State employees that their positions are free from political influence and coercion. Piccagli argues that this policy is best advanced by upholding the agreement. State adminis-

trators would then be on notice that they may not buy the resignation of an employee, whom they could not terminate in any other way, by contracting to provide severance pay and then abrogate the agreement due to the illegality of the contract. But public policy would be better served by the result we would have reached had the merits been before us. State employees covered under the Merit System, when faced with the coercive situation alleged by Piccagli, are protected. If their supervisors attempt to buy their resignations with severance pay, the employees should rely upon the System designed to protect them. If an employee decides to resign he should not expect to enforce an illegal severance-pay agreement. If the employee decides not to resign he has a remedy in the procedures established by the Merit System Council. Presumably employees who are wrongfully discharged will appeal the decision of the employing agency and receive the hearing provided by the Merit System Council rules. Sec. 4–02–04–10, N.D.A.C.[5] From the standpoint of public policy this should ensure that agencies will not dismiss good employees for devious reasons.

We grant the motion of the Health Department and dismiss the appeal.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ.

---

5. Section 4–02–04–10 of the North Dakota Administrative Code provides:

"4–02–04–10. PERMANENT EMPLOYEE APPEAL TO STATE PERSONNEL BOARD UPON DISMISSAL, SUSPENSION, OR DEMOTION FROM A MERIT SYSTEM AGENCY. A permanent employee who is dismissed, suspended, or demoted from a merit system agency shall have the right to appeal to the state personnel board not later than fifteen days after the effective date of the dismissal, suspension, or demotion. Such appeal shall be in writing and shall be transmitted to the state personnel director who shall schedule a formal hearing before the state personnel board within thirty days after receipt of the appeal. The state personnel director shall furnish the personnel officer of the agency concerned with a copy of the appeal in advance of the hearing. Both the employee and the appointing authority shall be notified reasonably in advance of the hearing and shall have the right to present witnesses and give evidence before the state personnel board."

Section 4–02–04–11, N.D.A.C., provides that after the hearing the State Personnel Board shall approve, disapprove, or modify the action of the merit system agency and further provides, in part: "In the event of disapproval, the state personnel board may order the reinstatement of the employee and the payment to the employee of such salary as was lost by reason of such dismissal, suspension, or demotion."