CENTRAL POWER ELECTRIC COOPERATIVE, INC., a corporation, Plaintiff and Appellee,

v.

C–K, INC., a corporation, Bottineau, ND, Gordon D. Carlson, Robert R. Kromrey, Rose M. Carlson, as officers of C–K, Inc.; Gordon D. Carlson, Robert R. Kromrey and Rose M. Carlson, as individuals, Defendants and Appellants.

Civ. No. 930258.

Supreme Court of North Dakota.

March 1, 1994.

Richard G. Hurdelbrink (argued), Vogel Law Firm, Mandan, for defendants and appellants.

Mark R. Hays (argued), Pringle & Herigstad, PC, Minot, for plaintiff and appellee.

NEUMANN, Justice.

This is an appeal from a district court order granting partial summary judgment in an eminent domain proceeding. We lack jurisdiction, decline to exercise our supervisory powers, and, accordingly, dismiss.

Central Power Electric Cooperative, a corporation (hereinafter Condemnor), is a rural electric generation and transmission cooperative. As part of a joint venture of Condemnor and Otter Tail Power Company, a new substation was built just outside of Bottineau, North Dakota. Part of this project included the construction of a transmission line from Gardena to Bottineau. The property touched by the proposed route for the new line included a residential mobile home park owned by C–K, Inc., a corporation, and Gordon D. Carlson, Robert R. Kromrey, and Rose M. Carlson (hereinafter Landowners).

After failed negotiations, eminent domain proceedings under chapter 32–15 of the North Dakota Century Code were initiated by Condemnor on March 8, 1993, when it served a summons and complaint on Landowners. Landowners timely filed an answer in which they requested a trial by jury on the matter of damages.[1] On May 7, 1993, Condemnor made a motion to the court requesting partial summary judgment as to use and necessity for an easement upon a portion of Landowners' mobile home park. This motion was accompanied by affidavits of Kenneth D. Holand, Project Supervisor for Condemnor, and Jay Jacobson, Manager of Operations and Engineering for Condemnor. Landowners' response in opposition to this motion included an affidavit of Gordon D. Carlson which set forth two alternative routes for the transmission line. By order dated June 2, 1993, the trial court granted Condemnor's motion for partial summary judgment.

The partial summary judgment order, drafted by Condemnor, granted Condemnor a transmission line easement on a portion of Landowners' property, and conditioned this easement "upon the payment of $2,500 into the Court by [Condemnor] pending determination of actual damages." Immediately thereafter, prior to any determination of damages by a jury, Condemnor deposited $2,500 with the court and constructed the transmission line across Landowners' property. This appeal followed.

Landowners raise three issues on appeal: first, whether the trial court violated NDCC § 32–15–29 when it made a determination of damages without a hearing on the merits, and when it granted Condemnor possession of an easement on Landowners' property prior to a hearing on damages; second, whether the granting of partial summary judgment was proper; and third, whether the order for partial summary judgment in this matter is a final order.

I. APPEALABILITY

Condemnor has made a motion to this court requesting that we dismiss the appeal

1. Eminent domain proceedings under chapter 32–15 may be divided into two parts. A bench trial is held to determine public benefit and necessity, and a jury trial may be requested to determine damages. NDCC § 32–15–13.

and award attorney's fees. In its motion, Condemnor argues that this partial summary judgment order is not subject to appeal under NDCC § 28–27–02, and also that there has been no Rule 54(b) certification. We agree that this order is not appealable because of the lack of Rule 54(b) certification.

■ There is a well-established, two-prong inquiry used when analyzing the jurisdiction of this court to consider appeals from orders in cases where there are unadjudicated claims remaining to be resolved by the trial court. *E.g.*, *Thompson v. Goetz*, 455 N.W.2d 580 (N.D.1990). The first of the two requirements is that the intermediate order appealed from must satisfy one of the enumerated bases for appeal found in NDCC § 28–27–02. *E.g.*, *Klindtworth v. Burkett*, 477 N.W.2d 176 (N.D.1991). The second requirement is a Rule 54(b) certification by the trial court. *Id.;* N.D.R.Civ.P. Rule 54(b).

■ In determining the appealability of this particular order granting partial summary judgment, we acknowledge that under the unique set of facts surrounding this case, this interlocutory order may well involve the merits of the action, or at least some part thereof. *See* NDCC § 28–27–02(5). Although not all orders granting partial summary judgment fall within § 28–27–02, *see e.g., Kavaney Realtor & Developer, Inc. v. Travelers Ins. Co.*, 501 N.W.2d 335, 336 n. 1 (N.D.1993) (order for partial summary judgment not appealable under NDCC § 28–27–02, but reviewable upon appeal from judgment); *see also Piccagli v. North Dakota State Health Dept.*, 319 N.W.2d 484 (N.D.

1982) (order for summary judgment did not fall within § 28–27–02(5)), the fact that the order allowed Condemnor to construct the transmission line prior to the jury trial on damages gives this order an element of finality. *See Sime v. Tvenge Assocs. Architects & Planners, P.C.*, 488 N.W.2d 606, 608 n. 1 (N.D.1992) (one concern when determining whether an order is appealable under NDCC § 28–27–02 is whether the trial court meant it to be final). We refrain from deciding this particular issue in this case. Instead, we focus on the fact that this order fails to meet the requirements of prong two, due to the absence of a Rule 54(b) certification.

■ Not only do we require Rule 54(b) certification for appeals of orders for partial summary judgment, *Ceartin v. Ochs*, 479 N.W.2d 863, 865–66 n. 2 (N.D.1992); *Gissel v. Kenmare Township*, 463 N.W.2d 668 (N.D. 1990); *Regstad v. Steffes*, 433 N.W.2d 202 (N.D.1988); *Brown v. Will*, 388 N.W.2d 869 (N.D.1986), but traditionally, we have also relied on the second prong of this test when determining the appealability of eminent domain cases after a finding of use and necessity, but prior to a determination of damages, *Wells County Water Resource Dist. v. Solberg*, 434 N.W.2d 577 (N.D.1989) (dismissed appeal; order upholding public necessity of easement with no Rule 54(b) certification); *Otter Tail Power Co. v. Demchuk*, 314 N.W.2d 298 (N.D.1982) (dismissed appeal; interlocutory orders without Rule 54(b) certification, prior to determination of damages). Regardless of the outcome of prong one, for purposes of this opinion, the failure of prong two makes this order unappealable.[2]

---

**2.** The fact that we are dismissing this appeal for lack of jurisdiction is not meant to reflect negatively on the validity of Landowners' substantive issues on appeal. *See Williams Co. v. Hamilton*, 427 N.W.2d 822 (N.D.1988). The issues raised by Landowners may have serious consequences. If the granting of partial summary judgment by the trial court is later determined to have been improper, the merits of Landowners' use and necessity claim will need to be determined. NDCC § 32–15–05. If Landowners are able to establish that material facts were in dispute, or the inferences to be drawn from undisputed facts existed, summary judgment on the issue of use and necessity was improper. *E.g., Adams v. Canterra Petroleum, Inc.*, 439 N.W.2d 540, 542 (N.D. 1989); N.D.R.Civ.P. Rule 56. "On appeal from a summary judgment the evidence is viewed in a

light most favorable to the party against whom the summary judgment was granted." *Adams*, 439 N.W.2d at 542. Although historically condemnors have been very successful in establishing use and necessity in eminent domain proceedings, *see e.g., KEM Elec. Coop., Inc. v. Materi*, 247 N.W.2d 668, 670 (N.D.1976) (condemnors in eminent domain proceedings given great latitude in both the selection and location of routes to be taken, and in the taking of particular property), this fact alone does not justify granting summary judgment on the issues of use and necessity, *see id.* (trial on the merits).

When contested, necessity is generally found unless the condemnor acted arbitrarily, capriciously, in bad faith, or fraudulently. *Oakes Mun. Airport Auth. v. Wiese*, 265 N.W.2d 697, 700

## II. SUPERVISION

■ Because Landowners essentially concede in their appellate brief that this order is not appealable without Rule 54(b) certification, we consider this appeal as a request to exercise our supervisory jurisdiction. N.D. Const. art. VI, § 2; *see B.H. v. K.D., D.D.*, 506 N.W.2d 368, 372 (N.D.1993) ("This Court has authority to exercise its original jurisdiction by issuing a supervisory writ."). Exercise of our supervisory jurisdiction is a matter of discretion, and we exercise it rarely and cautiously. *Jane H. v. Rothe*, 488 N.W.2d 879, 881 (N.D.1992). "Our superintending control over inferior courts is used to prevent injustice in extraordinary cases where no other remedy is adequate or allowed by law." *Odden v. O'Keefe*, 450 N.W.2d 707, 708 (N.D.1990). We make determinations of whether to exercise supervisory jurisdiction on a case-by-case basis, looking at the unique set of circumstances of each case. *E.g., Heartview Found. v. Glaser*, 361 N.W.2d 232 (N.D.1985).

■ Landowners would have us believe that the nature of this case is extraordinary, and, as such, merits our review. They distinguish the facts of this case from those of a typical eminent domain proceeding under chapter 32–15 of the North Dakota Century Code; specifically, the fact that Condemnor was allowed to construct the trans-mission line on the property before damages were determined and before final judgment was entered. Section 32–15–29 of the North Dakota Century Code does not provide for quick take, it provides for possession *after* judgment. Landowners' argument of the impropriety of Condemnor's actions is based on what we said in *Johnson v. Wells County Water Resource Bd.*, 410 N.W.2d 525 (N.D. 1987). In *Johnson*, we decided that the quick-take eminent domain constitutional provision[3] was not self-executing. *Id.* Absent specific legislative granting of the power of quick take, the state, or any of its departments, agencies, or political subdivisions having the power of eminent domain, lack the power to exercise quick take. *Id.* Condemnor does not contest Landowners' argument that no such legislative grant of the quick-take power has been granted to electrical cooperatives such as Condemnor.

If the contentions Landowners are making are true, then this may indeed be an unjust and extraordinary case warranting our supervision. The possible illegality and unconstitutionality of such an act is made clear in *Johnson*, 410 N.W.2d at 525. The diminished protection of property owners that is inherent in quick-take proceedings, *id.*, is the root of Landowners' complaint in this appeal. Such vulnerability is exacerbated by Landowners' contention that quick take was never addressed at trial, and only reared its ugly

---

(N.D.1978), *reh'g denied; KEM*, 247 N.W.2d at 672. In turn, these determinations are made by looking at whether the route selection is compatible with the greatest public benefit, and the least private injury. *KEM*, 247 N.W.2d at 668. *See generally* 1A Nichols, *Eminent Domain* § 4.11 (3d ed.); Eminent Domain: Review of Electric Power Company's Location of Transmission Line for Which Condemnation is Sought, 19 ALR4th 1026 (1983 & Supp.). While we have said before that "landowner[s] may not object merely because some other location might have been made or some other property obtained that would have been *as suitable* for the purpose," *KEM*, 247 N.W.2d at 671, citing to *Otter Tail Power Co. v. Malme*, 92 N.W.2d 514, 521 (N.D.1958) (emphasis ours), we have not held that this proposition stands when the property chosen for the route is *less suitable*. In light of the growing body of case law in the area of electromagnetic fields, *see* 8A Nichols, *Eminent Domain* ch. 26 (3d ed.), Landowners in this case may have a valid argument that alternate routes benefit the public with less private injury. Because this appeal is dis-missed, our discussion regarding the issue of necessity is mere speculation; it will be dealt with at a later date should an appeal arise from the final judgment.

3. The portion of our constitution addressing quick take states:

"*Section 16.* Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner.... No right of way shall be appropriated to the use of any corporation until full compensation therefor be first made in money or ascertained and paid into court for the owner.... Compensation shall be ascertained by a jury, unless a jury be waived. When the state or any of its departments, agencies or political subdivisions seeks to acquire right of way, it may take possession upon making an offer to purchase and by depositing the amount of such offer with the clerk of the district court of the county wherein the right of way is located."

N.D. Const. art. I, § 16.

head when Condemnor incorporated it into the order it drafted for the judge to sign.

If we could stop our analysis here, we would surely grant supervision; however, we must also consider whether other adequate remedies exist. *Lang v. Glaser*, 359 N.W.2d 884 (N.D.1985). Landowners failed to seek a stay or reconsideration by the trial court, and the transmission line has already been constructed on Landowners' property. If Condemnor's actions are found to be illegal or unconstitutional, it seems to us that a significant portion of any damages that might exist have already been incurred. The element of urgency does not exist. The order granting partial summary judgment will be appealable after damages are determined and final judgment is entered. We are not convinced that damages, of a nature different than those which already may have occurred, will result if we decide not to exercise our supervisory power.

Although this case may have the necessary ingredients to constitute an extraordinary case, Landowners, in effect, sat on their rights. They did not take the necessary steps available to prevent the injustice they now complain of, and the remedy of appeal will be available after entry of final judgment. It is for these reasons that we decline to exercise our power of supervision, and therefore dismiss. We will consider the possible illegality of Condemnor's actions on appeal from the final judgment should one be brought later. Condemnor's request for attorney's fees is denied, and neither party is awarded costs.

SANDSTROM, J., and ALLAN SCHMALENBERGER, District Judge, concur.

ALLAN SCHMALENBERGER, District Judge, sitting in place of MESCHKE, J., disqualified.

VANDE WALLE, Chief Justice, concurring in result.

The trial court's order granting Central Power possession of the property before a jury determined the damages, effectively created a form of "quick-take" eminent domain authority without benefit of law and without benefit of immediate review.

Quick take authority is given by our State Constitution only to the "state or any of its departments, agencies or political subdivisions...." Art. I, § 16, N.D. Const. Even then, the quick take authority is not a self-executing grant but must be authorized by the Legislature. *Johnson v. Wells County Water Resource Bd.*, 410 N.W.2d 525 (N.D. 1987). Central Power is not, of course, the State, a state department, agency or political subdivision, nor has the Legislature—nor could it—authorize Central Power to exercise quick take authority.

Here there was a court hearing as to the necessity for the taking, and in that respect this procedure differs from a quick take procedure. But the Constitution also specifies that no right of way shall be appropriated to the use of any corporation "until full compensation therefor be first made in money or ascertained and paid into court for the owner," and, most significantly, requires that the "[c]ompensation shall be ascertained by a jury, unless a jury be waived."

Here, contrary to the Constitution, compensation, as determined by Central Power, not by a jury, was paid into court, and Central Power was permitted to take possession of the property "pending determination of actual damages by a jury."

Adding insult to injury, Central Power, while using C–K's property, moved to dismiss C–K's appeal from the order granting partial summary judgment on the issue of necessity and permitting Central Power to have possession of the property, relying on *City of Williston v. Beede*, 289 N.W.2d 235 (N.D.1980), and sought attorney fees for its motion. Although we concluded in *City of Williston* that the issue of necessity and damages could not be bifurcated for purposes of appeal, there was one essential difference in that case. The condemnor had not been given possession of the property subsequent to the determination of the necessity for the taking but prior to the determination of damages. The landowner took the appeal subsequent to the decision of necessity and the trial court stayed the determination of damages pending the appeal of the necessity

determination. We exercised supervisory jurisdiction at the request of the City, lifted the stay and directed that the trial court proceed forthwith to determine damages.

In concluding that the issue of necessity and the issue of damages should not be bifurcated for purposes of appeal, it is apparent that we did not contemplate a procedure in the trial court that would violate the Constitution by permitting the condemnor to take the property before the damages have been ascertained by a jury. Here, notwithstanding that the procedure is clearly contrary to the provisions of the Constitution, the majority concludes that the issue of necessity for the taking cannot be determined on appeal because the damages are yet to be ascertained.

The majority relies on the evolution of our application of Rule 54(b) NDRCivP, to the appeal process. I have been an advocate of that development. *See, e.g., Gillan v. Saffell,* 395 N.W.2d 148 (N.D.1986). I do not shy away from that development. However, the safety net in using Rule 54(b) to restrict the number of appeals has been the use of our supervisory authority in a given case in which the result of denying immediate review by appeal is so prejudicial that to deny review would create a substantial injustice. *E.g., B.H. v. K.D.,* 506 N.W.2d 368 (N.D. 1993). Because I believe the procedure[1] sought by Central Power and approved by the trial court is so contrary to that required to unilaterally obtain a person's property without that person's consent, I would ordinarily urge that we exercise our supervisory jurisdiction to either immediately review the issue of the necessity for the taking or order Central Power to remove its transmission lines until compensation has been determined by a jury and paid into court.

But, despite what was an obviously improper acquisition of the property, C–K, as the majority opinion notes, did not request this court to exercise its supervisory jurisdiction, which can be done expeditiously. Rather, C–K pursued the ordinary route of appeal with its attendant time intervals for preparing a transcript and briefing, thus allowing time for the transmission line to be built. Although C–K argues that the continued presence of the transmission line damages its business, and perhaps its employees and customers, that argument should have prompted C–K to ask this court to exercise its supervisory jurisdiction rather than to file an appeal. *City of Williston, supra,* juxtaposed with the cases cited by the majority concerning our application of Rule 54(b) for determining the appealability of eminent domain cases, after a finding of use and necessity but prior to a determination of damages, clearly set forth the appropriate path to seek immediate relief from this Court. The most severe damage suffered by C–K's failure to do so may well be to Central Power should this Court on appeal from the final judgement in this matter reverse the finding of necessity made by the trial court.

I am persuaded by the majority opinion that under these circumstances we should not exercise our supervisory jurisdiction and I therefore concur in the result reached by the majority opinion.

LEVINE, Justice, concurring in the result.

Because there is no Rule 54(b) certification, I agree this case is not appealable. I also agree that this is not a case that warrants exercise of our supervisory power. I therefore concur in the result. I do not endorse the majority's gratuitous discussion of the merits of the case. In fact, I wish that I could wave a magic wand and erase footnote 2. While dictum may be useful on rare occasion, I do not believe it serves any useful purpose on this occasion.

---

1. The procedure used by Central Power—and approved by the trial court—to obtain possession of the property before the damages were ascertained by a jury and paid into court and the procedure to appeal the trial court's order are the crux of the issue before us. The substantive issues of whether or not there was a necessity for the taking and whether or not the sum deposited by Central Power ultimately proves adequate compensation are immaterial at this juncture. It is not the prerogative of Central Power or the trial court to ascertain damages. It is for the jury. Until the jury has determined the damages and that amount is paid into court, Central Power is not entitled to possession of the property.