(674 P.2d 1054)
No. 54,999

LARRY BUSCH and ELLEN BUSCH, *Appellants*, v. CITY OF AUGUSTA, *Appellee*.

Opinion filed December 29, 1983.

*Kiehl Rathbun,* of Wichita, for appellants.

*R. A. Munroe,* of Augusta, and *David C. All,* city attorney, for appellee.

Before REES, P.J., MEYER, J., and RICHARD W. WAHL, district judge assigned.

MEYER, J.: Appellants Larry and Ellen Busch (plaintiffs) appeal from a summary judgment in favor of appellee City of Augusta

(defendant) in an action seeking damages for the destruction of plaintiffs' real and personal property.

Plaintiffs were owners of a three-story brick-walled building located within the confines of defendant city, which is a duly organized municipality in Butler County, Kansas. Plaintiffs occupied this building for business purposes, operating an enterprise known as Busch Heating and Cooling.

On July 17, 1979, a fire was detected in the building. The fire department of the defendant city was summoned to the scene and battled the blaze. At one point the fire had essentially gutted the interior of the building; the upper floor joists had burned away, causing those upper floors to collapse into a heap of smoldering rubble on the ground floor. At that point, only the exterior walls and an interior partition wall remained intact.

After diligent efforts to extinguish the last of the rubble, since it was determined to be impossible at worst and impractical at best to completely put the fire out, it was rekindled. At this same time, officials of defendant city (*i.e.*, its engineer, fire chief and manager) also determined that the remaining structure constituted an immediate hazard to the public, and that the fire should be rekindled.

After the fire had burned out, defendant city undertook to demolish the skeleton of structure still standing. The cost of such demolition, $11,879.00, was levied as an assessment against the property. Plaintiffs were fully compensated by insurance for their loss, including the amount of the levy.

On September 10, 1979, plaintiffs brought this action, seeking damages for the allegedly wrongful destruction of their property. On October 1, 1979, defendant answered, generally denying liability. Thereafter, defendant moved for summary judgment.

On April 14, 1982, a hearing was held on defendant's motion. On September 23, 1982, the trial court filed its journal entry sustaining said motion. Plaintiffs duly perfected their appeal to this court.

At the outset, we note that plaintiffs prayed for $106,979.34 in total damages. They also admit, however, to receiving $128,318.35 from their insurance company in settlement of their claim. Thus, it appears that plaintiffs have been paid the entire amount of their loss by their insurer.

In *Dondlinger & Sons' Constr. Co. v. EMCCO, Inc.*, 227 Kan. 301, Syl. ¶ 6, 606 P.2d 1026 (1980), the court held:

"When the total amount of the loss of an insured property owner has been paid by the insurer, the right of action against the alleged wrongdoer rests in the insurer who, under K.S.A. 60-217, becomes the real party in interest and must bring the action for his reimbursement if one is to be maintained."

And see also *Thompson v. James*, 3 Kan. App. 2d 499, 502, 597 P.2d 259, *rev. denied* 226 Kan. 793 (1979).

Thus, plaintiffs are not the real parties in interest herein, and only the insurance company had the right to bring the instant action. K.S.A. 60-217. However, even though this point could be dispositive of the entire appeal, we shall nevertheless address the substantive aspects of this case to determine whether plaintiffs could prevail on the merits if they were the real parties in interest.

While plaintiffs' single stated issue is that summary judgment was improper, they raise several points in support of this issue. We will address each such point separately.

A. Summary Judgment

The first argument advanced by plaintiffs is that the granting of summary judgment was improper because disputed issues of material fact remained.

Summary judgment is governed by K.S.A. 60-256. That section provides, in part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." K.S.A. 60-256(c).

In *Williams v. Community Drive-in Theater, Inc.*, 214 Kan. 359, 364, 520 P.2d 1296 (1974), these statements were made, providing guidelines for the district court's consideration of a motion for summary judgment:

"A motion for summary judgment under the provisions of K.S.A. 60-256(c) is to be sustained only where the record conclusively shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In considering such a motion the movant's adversary is entitled to the benefit of all reasonable inferences and doubts that may be drawn from the facts under consideration. Where the facts presented in the motion are subject to conflicting interpretations or reasonable persons might differ as to their significance summary judgment is improper. It is only when it can be said that reasonable persons could reach but one conclusion from the same evidence that an issue may be decided as one of law. Summary judgment should never be granted merely because the court may believe movant will prevail if the action is tried on the merits."

Similar rules obtain when the issue on appeal is whether the trial court was correct to grant a summary judgment.

"An appellate court should read the record in the light most favorable to the party against whom summary judgment was entered. It should take such party's allegations as true, and it should give him the benefit of the doubt when his assertions conflict with those of the movant. Factual inferences tending to show triable issues must be considered in the light most favorable to the existence of those issues. If there is a reasonable doubt as to the existence of fact, a motion for summary judgment will not lie. Moreover, pleadings and documentary evidence must be given a liberal construction in favor of the party against whom the motion is directed. *Mildfelt v. Lair,* 221 Kan. 557, 561 P.2d 805, and cases cited therein." *Smith v. Marshall,* 2 Kan. App. 2d 213, 213-14, 577 P.2d 362, *rev'd on other grounds* 225 Kan. 70, 587 P.2d 320 (1978).

The issue of fact which plaintiffs claim was disputed is the extent of damage to the building and its contents, at the time that same was declared an immediate hazard to the public. Plaintiffs contend that the building and some of its contents were still salvageable at that point, and so the declaration and subsequent demolition were improper.

The gist of this argument is an allegation that the city officials were negligent in that they too hastily condemned plaintiffs' property.

Ordinarily, the presence or absence of negligence is not an issue susceptible to resolution by summary judgment. *Mechtley v. Price,* 217 Kan. 344, 347, 536 P.2d 1385 (1975). However, the cases have steadfastly stressed that in order to preclude summary judgment, the facts subject to dispute must be "material" to the conclusive issues in the case. If the resolution of an existing factual dispute will not affect the ultimate decision in the case, then such dispute does not involve material facts. As stated in *Secrist v. Turley,* 196 Kan. 572, 575, 412 P.2d 976 (1966):

"It may be said that an issue of fact is not genuine unless it has legal controlling force as to a controlling issue. A feigned or imaginary issue is not a genuine issue. A disputed question of fact which is immaterial to the issues does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of a material fact."

See also *Hiett v. Brier,* 2 Kan. App. 2d 610, 615, 586 P.2d 55, *rev. denied* 225 Kan. 844 (1978).

Therefore, in the case at bar, the issue of whether defendant's officers were negligent is immaterial if plaintiffs' cause of action in negligence is barred in any event by the Kansas tort claims act.

Defendant contends that plaintiffs' action is so barred, and we agree, as will be explained in the next section of this opinion. Thus, we hold here that summary judgment was proper on the theory of negligence, for all issues allegedly subject to dispute involved facts not material to genuine issues in the case.

B. The Negligence Theory

A point which should be initially addressed under this topic is the source of defendant's authority to condemn and demolish plaintiffs' building and to levy an assessment against the property. Plaintiffs assert an unconstitutional violation of due process of law in the destruction of their property without prior notice and an opportunity to be heard.

The defendant city has purported to act pursuant to K.S.A. 12-1756, which provides:

"When in the opinion of the enforcing officer, any structure is in such condition as to constitute an immediate hazard requiring immediate action to protect the public, such officer may erect barricades or cause the property to be vacated, taken down, repaired, shored or otherwise made safe without delay and such action may, under such circumstances, be taken without prior notice to or hearing of the owners, agents, lien holders and occupants. The cost of any such action shall be assessed against the property and paid in the manner provided by K.S.A. 12-1755."

K.S.A. 12-1755, referred to above, allows the city clerk to assess a special assessment against the property when the city expends funds to repair or remove an unsafe structure; that statute also directs that said assessment shall be extended to the tax rolls of the involved county.

These statutes are supplemented by the duly enacted ordinances of the defendant city, one of which provides as follows:

"STRUCTURES CONSTITUTING IMMEDIATE HAZARD. When in the opinion of the enforcing officer, any structure is in such condition as to constitute an immediate hazard requiring immediate action to protect the public, such officer may erect barricades or cause the property to be vacated, taken down, repaired, shored or otherwise· made safe without delay and such action may, under such circumstances, be taken without prior notice to or hearing of the owners, agents, lienholders and occupants. The cost of any such action shall be assessed against the property and paid in the manner provided by Section 5-607 of this article. (Code of 1963, Sec. 5-608)" Ordinance of City of Augusta 5-708.

The officials of defendant city clearly had the authority to make the determination they did make, and to take those actions taken in response to that determination. The question which we must ask next is, what is the defendant city's liability if such

determination was incorrect due to negligence of one of its officials in the inspection of plaintiffs' building?

For many years Kansas clung to the traditional doctrine of sovereign, or governmental, immunity. Limited exceptions existed, but only those persons who could bring themselves within one could maintain an action in tort against a governmental entity. For an overview, see *Brown v. Wichita State University,* 217 Kan. 279, 291-92, 540 P.2d 66 (1975), *modified on reh.* 219 Kan. 2, 547 P.2d 1015 (1976).

In 1978, the Kansas Supreme Court discarded the traditional rule, and its subtle distinction between "governmental" and "proprietary" functions, in favor of a new approach. The court announced the following rule in *Gorrell v. City of Parsons,* 223 Kan. 645, Syl. ¶ 2, 576 P.2d 616 (1978):

"A municipality is immune from tort liability only for acts and omissions (1) constituting the exercise of a legislative or judicial function, or (2) constituting the exercise of an administrative function involving the making of a basic policy decision."

In response to the *Gorrell* decision, the Kansas legislature enacted the Kansas tort claims act, K.S.A. 1982 Supp. 75-6101 *et seq.* This act contains the following general statement:

"Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 1982 Supp. 75-6103(a).

Some of the limitations referred to above are found in K.S.A. 1982 Supp. 75-6104. That section begins with: "A governmental entity . . . shall not be liable for damages resulting from . . .", and continues, enumerating seventeen specific exceptions to the liability imposed generally by K.S.A. 1982 Supp. 75-6103(a). K.S.A. 1982 Supp. 75-6104 culminates with the following caveat:

"The enumeration of exceptions to liability in this section shall not be construed to be exclusive nor as legislative intent to waive immunity from liability in the performance or failure to perform any other act or function of a discretionary nature."

There is some dispute as to whether the law pre-*Gorrell*, the law of *Gorrell*, or the Kansas tort claims act should govern in the instant case. The effective date of the Kansas tort claims act was

July 1, 1979. The occurrence in the case at bar was on July 17, 1979, and thus the act is plainly applicable to this case.

The trial court cited the Kansas tort claims act in ruling against plaintiffs, but its journal entry is silent as to which exception it relied upon.

Defendant maintains that it is insulated from liability by virtue of the following exception: "failure to provide, or the method of providing, police or fire protection." K.S.A. 1982 Supp. 75-6104(*m*).

While it is not argued specifically by plaintiffs, we should consider whether the act of alleged negligence, that of inspecting plaintiffs' property and declaring same an immediate hazard to public safety, is in fact an act of providing police or fire protection. We conclude that it is, and that defendant is thus immune from liability under exception (*m*) noted above.

In addition, there is another exception which also appears to be squarely in point with the instant case. K.S.A. 1982 Supp. 75-6104(*j*) provides that no liability shall be imposed on the basis of "the failure to make an inspection, or making an inadequate or negligent inspection, of any property other than the property of the governmental entity, to determine whether the property complies with or violates any law or regulation or contains a hazard to public health or safety."

Thus, even if the facts are exactly as plaintiffs allege, and defendant's officials were negligent in their inspection and evaluation of the improvements on plaintiffs' property, the statutory exceptions noted above operate to bar plaintiffs' tort claim. We therefore affirm the trial court's judgment for defendant, insofar as it rejects plaintiffs' negligence theory.

C. Eminent Domain Theory

Plaintiffs also argue that their claim for damages is cognizable under the theory of eminent domain.

A generalized definition of the power of eminent domain may be found at 29A C.J.S., Eminent Domain § 1, p. 161:

"Eminent domain is the right or power to take private property for public use; the right of the sovereign, or of those to whom the power has been delegated, to condemn private property for public use, and to appropriate the ownership and possession thereof for such use upon paying the owner a due compensation."

And see also *Foster v. City of Augusta,* 165 Kan. 684, 690, 199 P.2d 779 (1948).

We conclude that defendant's actions constitute an exercise of the police power, and not that of eminent domain. The distinction between the two powers has been stated thus:

"Eminent domain takes property because it is useful to the public, while the police power regulates the use of, or impairs rights in, property to prevent detriment to public interest; in the exercise of eminent domain private property is taken for public use and the owner is compensated, while the police power regulates an owner's use and enjoyment of property, or deprives him of it, by destruction, for the public welfare, without compensation other than the sharing of the resulting general benefits. Constitutional provisions against taking private property for public use without just compensation impose no barrier to the proper exercise of the police power." 29A C.J.S., Eminent Domain § 6, p. 178.

And in *Riddle v. State Highway Commission,* 184 Kan. 603, 612, 339 P.2d 301 (1959), the court spoke as follows:

"Under the power of eminent domain the sovereign may take or damage private property for a public purpose upon payment of just compensation (*Highbarger v. Milford,* [71 Kan. 331, 80 Pac. 633]; *Simmons v. State Highway Commission,* [178 Kan. 26, 283 P.2d 392]). On the other hand, the police power is the power which the state inherently has to restrict the use of property without paying compensation by valid regulations intending to promote public health, safety, morals and general welfare (*Mugler v. Kansas,* 123 U.S. 623, 31 L.Ed. 205, 8 S.Ct. 273; *Schaake v. Dolley,* 85 Kan. 598, 118 Pac. 80, 37 L.R.A. [n.s.] 877; *State ex rel. Carter v. Harper,* 182 Wis. 148, 153, 196 N.W. 451, 33 A.L.R. 269)."

And in *City of Marysville v. Standard Oil Co.,* 27 F.2d 478 (8th Cir.), *aff'd* 279 U.S. 582, 73 L.Ed. 856, 49 S.Ct. 430 (1928), the court spoke even more directly to the point:

"That property may be destroyed as a result of the legitimate exercise of the police power of a state is not a taking of property for public use, and does not deprive the owner of it without due process of law." 27 F.2d at 484.

We conclude in agreement with the trial court's judgment that the acts of defendant were a reasonable exercise of the police power granted it by K.S.A. 12-1756 and local ordinances. Therefore, such acts do not constitute a compensable taking under the power of eminent domain. We thus reject plaintiffs' claim based on the eminent domain theory.

## SUMMARY

In summation, plaintiffs brought suit for damages based on two theories: negligence and eminent domain. As for the first theory, the action based on negligence is barred by K.S.A. 1982 Supp. 75-6104(*j*) and (*m*). As for the second, defendant's actions were pursuant to its police power under K.S.A. 12-1756, not pursuant

to the power of eminent domain; thus, while these actions may have affected plaintiff's interest in the property, no compensable taking of property occurred.

The district court was correct in granting judgment for defendant, despite the possible existence of factual disputes, for such disputes were not material. Accordingly, we affirm the judgment of the trial court in all respects.

Affirmed.

REES, J.: I concur in the result.