(722 P.2d 1125)
No. 58,102

GRAINLAND FARMS, INC., a corporation, *Appellant*, v. ARKANSAS LOUISIANA GAS COMPANY, a division of Arkla, Inc., a corporation, and THREE STAR CONSTRUCTION COMPANY, INC., *Appellees*.

Opinion filed July 31, 1986.

*Otis W. Morrow*, of Arkansas City, for the appellant.

*Stuart R. Collier* and *Edward F. Arn*, of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, for the appellees.

Before PARKS, P.J., REES, J., and DAVID F. BREWSTER, District Judge, assigned.

PARKS, J.: Plaintiff Grainland Farms, Inc. (Grainland) filed this action in trespass against defendants, Arkansas Louisiana Gas Company (Arkla) and Three Star Construction Company, Inc. (Three Star), seeking both actual and punitive damages. The trial court granted defendants' motion for summary judgment concluding that plaintiff's action was precluded in light of the admitted facts and Arkla's exercise of its power of eminent domain. Plaintiff appeals.

Grainland is the owner of some farm land in Cowley County, Kansas. In the autumn of 1982, defendant Three Star was employed as an independent contractor by defendant Arkla to lay a four and one-half inch gas pipeline. In performing this task, Three Star unwittingly strayed from Arkla's right-of-way and installed both the pipeline and a tie-in valve on plaintiff's property. Arkla was first advised of the intrusion of its pipe onto plaintiff's land in a March 1, 1983, letter from Grainland. An Arkla representative inspected the site where the pipe and valve extended onto plaintiff's property and began negotiations with

plaintiff concerning a settlement of damages. These negotiations were fruitless.

On June 8, 1983, Arkla initiated a condemnation proceeding in order to condemn the property upon which its pipeline had been mistakenly installed. Plaintiff appeared and was represented by counsel in the condemnation proceeding. Appraisers were appointed by the district court and a public hearing concerning the value of the property taken was held followed by its physical viewing. The appraisers were instructed on their duties and each received a copy of the court's written instructions containing the provisions of K.S.A. 26-513. The appraisers awarded a damage sum of $500 to the plaintiff to be paid by Arkla. Plaintiff did not appeal from this award and accepted its payment.

On July 28, 1983, Grainland commenced this action against Three Star and Arkla claiming actual damages of $500 and punitive damages in excess of $10,000 on a theory of trespass. The district court granted defendants' motion for summary judgment holding that, by virtue of Arkla's power of eminent domain, the defendants' intrusion on plaintiff's land was not a trespass but a de facto taking which could only be remedied by a condemnation proceeding. Plaintiff appeals contending that an independent action for damages arising out of a trespass is not precluded as a matter of law and that the condemnation award did not, in fact, include damages for defendants' intrusion onto its property eight months prior to commencement of the condemnation proceeding.

Eminent domain is the right or power to take private property for public use; the right of the sovereign, or of those to whom the power has been delegated, to condemn private property for public use, and to appropriate the ownership and possession thereof for such use upon paying the owner a due compensation. *Busch v. City of Augusta*, 9 Kan. App. 2d 119, Syl. ¶ 6, 674 P.2d 1054 (1983). The exercise of the power of eminent domain is referred to as condemnation and it is a special statutory proceeding and not a civil action governed by the code of civil procedure. *Concerned Citizens, United, Inc. v. Kansas Power & Light Co.*, 215 Kan. 218, 225, 523 P.2d 755 (1974). When property has been in fact taken for public use without formal condemnation proceedings and it appears that the taker has no intention to initiate condemnation proceedings, the property owner may

invoke proceedings to obtain just compensation by filing what is referred to as an inverse condemnation action. *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Transp.*, 234 Kan. 121, 124, 671 P.2d 511 (1983). Inverse condemnation actions are in the nature of a suit on implied contract because our law implies an obligation to compensate an owner whose property is taken for public use. *Ventures in Property I v. City of Wichita*, 225 Kan. 698, 705-06, 594 P.2d 671 (1979).

Defendants argue that the availability of the remedy of inverse condemnation for landowners whose property is taken without the benefit of condemnation proceedings precludes resort to the common-law remedy of trespass. Compare *Tuffley v. City of Syracuse*, 82 App. Div. 2d 110, 442 N.Y.S.2d 326 (1981) and *St. Catherine v. Mountaintop A.J.S.A.*, 58 Pa. Commw. 181, 427 A.2d 726 (1981) (property owner limited to inverse condemnation), with *Ostrem v. Alyeska Pipeline Service Co.*, 648 P.2d 986 (Alaska 1982) (property owner may elect between action in trespass or inverse condemnation). However, in this case, there was never any need for plaintiff to institute an inverse condemnation action because, once discovered, Arkla acknowledged its taking and initiated a condemnation proceeding. Thus, the more particular issue raised by this case is whether the condemnation award accepted by plaintiff precluded its action for actual and punitive trespass damages.

Cases from other jurisdictions on this issue are collected in Annot., 33 A.L.R.3d 1132. The majority of these decisions conclude that the condemnation award does not necessarily include damages arising from the prior trespass so that an independent suit may be maintained. See, *e.g., Application of Bubb v. Christensen*, 200 Colo. 21, 26, 610 P.2d 1343 (1980); *Dept. of Transportation v. McGovern*, 103 Ill. App. 3d 461, 431 N.E.2d 437 (1982); and *Seattle v. Loutsis Investment*, 16 Wash. App. 158, 173-74, 554 P.2d 379 (1976). These decisions reason that the condemnation proceeding is limited to compensating the landowner for the taking and does not include damages which are not directly related to a diminution in the fair market value of the property such as may result from a tortious trespass. *McGovern*, 103 Ill. App. 3d at 464. In *Silva v. Arkansas Louisiana Gas Co.*, 602 P.2d 631, 633 (Okla. 1979), the court held that the landowner was precluded from maintaining an action for negligence and

trespass when there had been a prior condemnation award, but the court's decision was based on the conclusion that the land-owner had waived all damages which were or could have been claimed in the condemnation proceeding. Thus, the opinion turned on whether the damages claimed in the trespass were the type of damages which were remediable in the condemnation.

The other cases where an action for trespass damages was held precluded by a previous condemnation award have similarly concluded that the damages sought were the type which could have been claimed in the condemnation. While most of these cases adopt a theory of waiver (see, *e.g., Brown v. Davis County,* 196 Iowa 1341, 195 N.W. 363 [1923]), res judicata has also been relied upon. *Leber v. Minneapolis & Northwestern Ry. Co.,* 29 Minn. 256, 13 N.W. 31 (1882). However, only a few of the cases in which the common-law action was forestalled were decided in this century.

Kansas is not without ancient precedent on the issue. In *Fitzgerald v. C.K. & W. Rld. Co.,* 48 Kan. 537, 29 Pac. 703 (1892), the railroad initiated proceedings to condemn lands for con-struction of railroad tracks. The right-of-way commissioners filed their report awarding compensation to the property owner and the owner appealed to the district court. The law provided that once the commissioners entered an award, the railroad was to post a bond for the amount of that award and title would then pass to the condemnor. The railroad failed to give the bond to secure the eventual judgment but went ahead and entered the land and graded a roadbed. The railroad subsequently reached an agreement with the property owner for the amount of his damages, and the district court in which the appeal rested entered judgment for the amount of the agreed damages. The railroad tendered payment and the landowner accepted it. The landowner then filed suit seeking damages for the entry on the land made by the railroad without posting the bond and prior to reaching an agreement on the condemnation award.

The court affirmed the judgment for the railroad concluding that the prior condemnation proceedings fully compensated plaintiff for any damages which may have arisen from the tres-pass. The opinion stated as follows:

"The first contention of the plaintiff in error is, that the defendant in error was a trespasser, and liable for damages to the plaintiff in error, for the reason that it

had no right to go upon the land of the plaintiff in error at the time it did to commence its grading, because it had not executed and filed the bond to indemnify the plaintiff, as required by statute. This was probably true. But the matter was adjudicated and settled in the appeal case. In that case the plaintiff claimed damages for the land appropriated by the company for its right-of-way, and the company tendered a judgment for such damages, among others, which the plaintiff accepted, and judgment was entered accordingly. This judgment was subsequently paid by the company and receipted by the plaintiff, and constituted a full payment for all damages for any trespass committed by entering upon said premises for purposes of grading the road-bed of said railway, as well as for the land appropriated. The bond, which it is alleged was not given until after the company had entered upon the lands of plaintiff for grading purposes, is only provided by the statute as a security for the payment of any judgment that may be obtained against the company on the appeal from the award of the commissioners, and is of no consequence after the judgment is paid. And if the company goes ahead and appropriates the right-of-way, and grades its road-bed without giving any bond at all, but subsequently actually pays whatever judgment is obtained against it, and the plaintiff in the judgment receives the same, such payment is complete satisfaction for any damages growing out of the former entry and appropriation of the land. The owner of the land need not permit the company to enter upon the premises for the purpose of grading the right-of-way until it has given the bond required on an appeal from the award of damages by the condemnation commissioners. Until such bond is given, he can enjoin the company from entering thereon." *Fitzgerald*, 48 Kan. at 538-39.

While *Fitzgerald* held that the trespass action was precluded, it did so based on the particular circumstances of the case. The plaintiff landowner only sought damages arising out of the entry on the land for grading the roadbed and the court concluded that these damages were included in the condemnation award. The court did not say that any action for trespass was precluded or that all trespass damages are subsumed in a condemnation proceeding.

The purpose of the condemnation proceeding is to provide just compensation to the landowner when his property is appropriated for a public use. The measure of damages for the taking is based on the value of the property immediately before and immediately after the taking. K.S.A. 26-513(b) and (c). By contrast, in an action for trespass, the plaintiff may be awarded any damages which are the immediate consequence of the trespass. *Ultimate Chem. Co. v. Surface Transp. Int'l, Inc.*, 232 Kan. 727, 729, 658 P.2d 1008 (1983). The injured landowner is entitled to receive at least nominal damages (*Belluomo v. KAKE TV & Radio, Inc.*, 3 Kan. App. 2d 461, Syl. ¶ 1, 596 P.2d 832, *rev. denied* 226 Kan. 792 [1979]), and exemplary or punitive damages

may be recovered in an action for trespass when the trespasser has been guilty of malice, wantonness, or oppression. *Ultimate*, 232 Kan. at 730. It is certainly possible that a landowner may suffer damages from a trespass which would not be compensable as part of a taking. See *Ancarrow v. City of Richmond*, 600 F.2d 443, 445 (4th Cir. 1979); *Wehrum v. Village of Lincolnwood*, 91 Ill. App. 2d 418, 235 N.E.2d 343 (1968). Therefore, we conclude that the district court erred in holding that the condemnation award precluded the bringing of any trespass action. However, we agree with the ultimate decision of the court that summary judgment was proper in this case because the uncontested record failed to support a claim for any damages which would not have been included in the condemnation award.

The undisputed evidence on the motion for summary judgment was that, prior to defendants' intrusion on plaintiff's land, plaintiff had been involved in a soil conservation project which necessitated the shaping and diverting of existing waterways into a single new waterway. The construction of Arkla's pipe on the property disrupted plaintiff's new waterway and the trespass petition sought $500 in actual damages for this interference. Plaintiff also contended that the laying and presence of the pipeline disturbed the natural beauty of the property. However, included in the factors which must be considered by the condemnation appraisers is damage to the appearance of the property, the cost of new drains, and diminution in value of the property from the loss of existing drainage, as well as damage to passageways and the damage to property abutting on a right-of-way due to a change in grade. K.S.A. 26-513(d). Thus, all of the particular items of damage allegedly arising out of the trespass are matters which should have been taken into account in the appraisers' condemnation award. Indeed, it is interesting to note that the award was for $500; the same sum as that claimed in actual damages for the trespass.

Plaintiff contends that the condemnation award compensates plaintiff for its loss after the condemnation proceeding but that it sustained trespass damages between the date of the first intrusion and the point when condemnation was begun. This contention ignores the basis for "just compensation." A taking occurs when property is appropriated to a public use regardless of whether the appropriation has been preceded by condemnation

or whether the landowner is compelled to bring an inverse condemnation action to obtain compensation. See *Herman v. City of Wichita*, 228 Kan. 63, 612 P.2d 588 (1980). Therefore, the condemnation award encompassed any damages which may fairly be considered a part of just compensation dating from the point of defendants' initial intrusion on the land. There may well be cases in which trespass damages could be sustained which are not compensated in a subsequent condemnation but plaintiff's pleading and the undisputed facts presented to the trial court disclose that is not the case here.

Plaintiff did allege that defendants engaged in some sort of oppressive or malicious conduct which would not have been addressed in the condemnation proceeding but which would have entitled it to punitive damages in a trespass action. However, the record of undisputed evidence does not support an inference of malicious conduct on the part of either defendant. Plaintiff conceded that the initial entry on the land by Three Star was, at best, negligent. In addition, once Arkla confirmed that its pipe was intruding on plaintiff's land, it sought to negotiate a settlement of the damages. When those efforts failed, Arkla exercised its eminent domain authority in order to establish a just amount of compensation. Plaintiff never alleged that Arkla engaged in any fraudulent conduct and the substance of its claim of maliciousness was that Arkla refused to pay the damages plaintiff sought in the parties' negotiations but, instead, Arkla initiated the condemnation proceeding. Plaintiff did not contend that the condemnation was unnecessary or in excess of Arkla's authority, or that the scope of the condemnation itself was excessive—all matters which cannot be considered in the condemnation proceeding but must be the subject of an independent suit. *In re Condemnation of Land for State Highway Purposes*, 235 Kan. 676, 679-80, 683 P.2d 1247 (1984). Instead, plaintiff alleged that Arkla's exercise of a power which it clearly had the legal authority to use was itself a malicious act. We disagree and conclude that based on the undisputed record, no reasonable person could conclude that Arkla's conduct was wanton, oppressive, or malicious.

In sum, although we hold that a condemnation proceeding and award does not necessarily preclude the maintenance of an action for damages arising out of a prior trespass, the record on

the motion for summary judgment, read in the light most favorable to plaintiff, failed to establish an inference of any damages beyond those compensated in the condemnation proceeding. Since the district court's summary judgment in favor of defendants must be affirmed if correct for any reason (*Strehlow v. Kansas State Board of Agriculture*, 232 Kan. 589, 592, 659 P.2d 785 [1983]), plaintiff's prior acceptance of the condemnation award precludes the maintenance of this suit.

Plaintiff also raises an issue concerning the trial court's orders regarding discovery. Plaintiff sought to compel the appearance of an out-of-state witness in Wichita or Arkansas City for deposition. Defendants opposed the action on the ground that the witness was in poor health but stated they would agree to a telephone deposition. The trial court refused to compel the appearance of the witness, stating that plaintiff could submit written interrogatories to the witness.

The control of the discovery process rests in the discretion of the trial court. *Lone Star Industries, Inc.*, 234 Kan. at 131-32. Plaintiff was not denied access to the witness by the trial court's ruling and no abuse of discretion has been demonstrated.

Affirmed.