**Cecil ADAMS, Plaintiff and Appellant,**

**v.**

**CANTERRA PETROLEUM, INC.,
Defendant and Appellee.**

Civ. No. 880357.

Supreme Court of North Dakota.

April 20, 1989.

"IV.

"V.

\* \* \* \* \* \*

"XIII.

"That in 1986, while in Minnesota, [Loren] and [Cindy's] marriage disintegrated and they divorced in 1987.

"XIV.

"That in 1986, while in Minnesota, [Cindy] failed to follow through with parenting classes.

"XV.

"That in 1986, while in Minnesota, [Cindy] attempted suicide and was placed in a medical facility.

\* \* \* \* \* \*

"XIX.

"That the parents, [Loren] and [Cindy] had only intermittent contact with the three children in 1987.

"XX.

\* \* \* \* \* \*

"XXIV.

Howe, Hardy, Galloway & Maus, P.C., Dickinson, for plaintiff and appellant; argued by Albert J. Hardy.

Fleck, Mather, Strutz & Mayer, P.C., Bismarck, for defendant and appellee; argued by Kenneth J. Horner.

ERICKSTAD, Chief Justice.

Cecil Adams brought this action against Canterra Petroleum, Inc., asserting that Canterra had unlawfully entered onto his land, and that this entrance constituted a trespass. Canterra filed a motion for summary judgment of dismissal of Adams' complaint with prejudice which the district court granted. Adams appeals from the judgment dated October 12, 1988, entered pursuant to the order for summary judgment dated October 5, 1988. We reverse and remand.

Adams is a rancher in Golden Valley County, North Dakota, and owns the Northeast Quarter (NE¼) of Section Thirty-four (34), Township One Hundred Forty-one (141) North, Range One Hundred Three (103) West of the Fifth Principal Meridian, Golden Valley County, North Dakota. A road known as the Wanagan Creek Road runs across the NE¼ of Section 34 and across a creek known as Knutson Creek. This road is owned and maintained by Golden Valley County. In June of 1980, the Golden Valley County Board of County Commissioners entered into an agreement with Canterra's predecessor-in-interest, Al–Aquitaine Oil Company. In this agreement, the existing truss bridge over the creek was to be abandoned because it was not designed for the future proposed loads. Al–Aquitaine agreed to install a new crossing and a new approach to the crossing.

In his deposition, Adams asserts that he found out about this agreement after the contract had been let. He did not approach anybody to discuss the matter and "assumed somebody's gonna come around and say, 'We want some right-of-way. We've got some fence to be moved.' Nobody come around. And they certainly knew they were gonna do it before that. So we packed up and went out west for a couple weeks. And, when we come back, it was practically done." On September 25, 1980, Al–Aquitaine notified the Golden Valley County Commissioners, by letter, that the work had been completed.

Adams blocked off the new crossing and eventually dug a hole in front of it, making the new crossing unusable.[1] The traffic was apparently diverted across the old bridge. In 1984, Golden Valley County undertook proceedings to condemn a strip of Adams' land for the purpose of reconstructing the crossing built in 1980. A special board was appointed to fix the damages to be paid by the county for the taking of the real property by condemnation. At the condemnation hearing, which Adams attended, damages for the taking of the property were determined to be $454.70 for the value of the land and the value of the slope easements, plus $500 for loss of profit and general damages, for a total of $954.70. On September 4, 1984, the Golden Valley County Auditor notified Adams that a draft for cash in the amount of $954.70 had been deposited with the Clerk of the District Court in and for Golden Valley County. Adams initially served a notice of appeal upon the chairman of the board of county commissioners, Don Abernethy, but did not pursue the appeal. On October 23, 1985, Adams cashed the warrant for the damages and deposited it in his bank.

On May 8, 1986, Adams filed a complaint against Canterra, asserting that Canterra, through its employees, agents, or predecessors in interest, entered his land and constructed a roadway for its use and

1. In his deposition, Adams asserts that he blocked off the crossing in the spring of 1981 while the order for summary judgment, prepared by counsel for Canterra, states that "[o]n or about April 2, 1984, Adams blocked the new crossing over Knutson Creek...."

purpose.[2] He alleged that the entry was done without his knowledge or consent and constituted a trespass, for which he was entitled to receive exemplary damages. Canterra answered, admitting that it (or its predecessor) had entered the land, but for the purpose of repairing and reconstructing a bridge. Canterra asserted that Adams knew about, and had consented to, the construction;[3] that the construction was performed by Canterra on behalf of Golden Valley County; and that Adams was fully compensated for such use by the county through condemnation proceedings.

On September 7, 1988, Canterra filed a motion for summary judgment. In its brief in support of the motion, Canterra argued that it was acting on behalf of the county and that the 1984 condemnation was a bar to the action. In his response to the motion for summary judgment, Adams argued that he was seeking recovery for the original trespass in 1980 and that Golden Valley County did not start condemnation proceedings until 1984, when Adams' land was reentered to redo the work done in 1980. The district court granted Canterra's motion for summary judgment, stating that "it appears to this Court that the material and relevant facts necessary to a determination of the legal issues are undisputed and that the Defendant is entitled to judgment as a matter of law." Summary judgment was entered in favor of Canterra on October 12, 1988.

The issue on appeal is whether or not the district court erred in granting Canterra's motion for summary judgment.

Summary judgment is a procedure for promptly and expeditiously disposing of a controversy without a trial if there is no dispute as to any material fact or the inferences to be drawn from undisputed facts or when only a question of law is involved. *Thiele v. Lindquist & Vennum,* 404 N.W. 2d 52, 53–54 (N.D.1987). In determining whether a summary judgment is appropriate the court may consider the pleadings, depositions, admissions, affidavits, and interrogatories. *Id.* at 54. On appeal from a summary judgment the evidence is viewed in a light most favorable to the party against whom the summary judgment was granted. *Id.*

Rule 56(e) of the North Dakota Rules of Civil Procedure provides in pertinent part that:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

In the order granting Canterra's motion for summary judgment, the district court noted that, although Adams had filed a brief in resistance to the motion, he had not submitted a sworn affidavit or other appropriate material pointing out the issues of fact that remained for a trial on the merits.

We have said that:

"A party resisting a motion for summary judgment has the responsibility of presenting competent admissible evidence by affidavit or other comparable means, NDRCivP 56(e); *Spier v. Power Concrete, Inc.,* 304 N.W.2d 68 (N.D. 1981); and, if appropriate, drawing the

---

**2.** The complaint asserts that "on or about May, 1984, the Defendant ... entered...." This date appears to be inaccurate as subsequent pleadings, the deposition of Adams, and the affidavit of Abernethy, indicate the initial entry and construction took place during the summer of 1980. The second entry and reconstruction took place in the summer and fall of 1985.

**3.** Canterra argues that Adams had at least constructive, if not actual notice, of the work to be done. However, in *Cowl v. Wentz,* 107 N.W.2d 697, 700 (N.D.1961), we said that "[w]here giving of notice is relied on to sustain forfeiture or divestiture of one's rights, statutory directions as to how such notice shall be given must be strictly complied with." *See* section 24–05–11, N.D.C.C., for the notice requirements when a county initiates a condemnation proceeding. As a general rule, enactments prescribing the mode of procedure in condemnation proceedings must be strictly complied with. *See* 29 C.J.S. *Eminent Domain* § 215a; 18 Am.Jur., *Eminent Domain,* § 312.

court's attention to evidence in the record by setting out the page and line in depositions or other comparable document containing testimony or evidence raising a material factual issue, or from which the court may draw an inference creating a material factual issue.

"In summary judgment proceedings the trial court has no legal obligation, judicial duty, or responsibility to search the record for evidence opposing the motion for summary judgment. This principle and legal concept applies equally well, or more so, to appellate proceedings involving an appeal from the granting of a summary judgment for the further reason that the appellate court, except for jurisdictional matters and taking judicial notice, generally considers only those issues raised in the trial court." *First Natl. Bank of Hettinger v. Clark,* 332 N.W.2d 264, 267 (N.D.1983).

Under Rule 56, N.D.R.Civ.P., a movant for summary judgment must show that there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts and that he is entitled to a judgment as a matter of law on the facts shown.

In *Northwestern Equipment, Inc. v. Badinger,* 403 N.W.2d 8, 9 (N.D.1987), we noted that:

" 'Summary judgment is not appropriate if the moving party is not entitled to judgment as a matter of law' [*Krueger v. St. Joseph's Hospital,* 305 N.W.2d 18, 22 (N.D.1981)], even if 'the adverse party fails to respond by filing proof in opposition' [*Rice v. Chrysler Motors Corp.,* 198 N.W.2d 247, 252 (N.D.1972)]. *See also Stevens v. Barnard,* 512 F.2d 876 (10th Cir.1975); *Kraftsman Container Corp. v. Finkelstein,* 461 F.Supp. 245 (E.D.N. Y.1978)."

The rule does not authorize the entry of a summary judgment merely because the adverse party fails to respond by filing proof in opposition unless it is appropriate to do so. *Rice v. Chrysler Motors Corp.,* 198 N.W.2d 247, 252 (N.D.1972).

The district court indicated that it did review Adams' entire deposition, but found nothing in it to contradict the facts established by Canterra in its affidavits and materials supporting the motion for summary judgment. The determinative issue in this case is not whether or not there are genuine issues of material fact but is whether or not the undisputed facts justify a dismissal of the complaint as a matter of law. We do not believe that is true in this case. The affidavit submitted by Canterra in support of its motion for summary judgment merely listed chronological events which do not establish that Canterra is entitled to dismissal of the complaint as a matter of law.

■ An important question which was not addressed in the order granting the motion for summary judgment, or the order granting summary judgment, regards the 1984 condemnation award. Was the 1984 award of damages intended to be a "curative proceeding" as argued by Canterra, covering the 1980 entry and original construction as well as the 1985 re-entry and reconstruction, or was it intended only to cover the 1985 construction as contended by Adams? The Resolution Awarding Damages, dated August 31, 1984, and the letter to Adams regarding damages for condemnation of land by a special board, dated September 4, 1984, make no mention of the 1980 entry and crossing construction. Our review of the record does not reveal any evidence which indicates whether or not the 1984 award was intended to cover the 1980 entry, the 1985 re-entry, or both. No statement of fact was included in the order for summary judgment regarding this matter.

Condemnation proceedings must be in accord with the provisions of the North Dakota Constitution and the North Dakota Century Code. *See Square Butte Elec. Coop. v. Hilken,* 244 N.W.2d 519 (N.D.1976). Article I, section 16 of the North Dakota Constitution, provides in pertinent part that:

"Private property shall not be taken or damaged for public use without just compensation having been *first* made to, or paid into court for the owner, unless the owner chooses to accept annual pay-

ments as may be provided for by law. No right of way shall be appropriated to the use of any corporation until full compensation therefor be *first* made in money or ascertained and paid into court for the owner. . . . When the state or any of its departments, agencies or political subdivisions seeks to acquire right of way, it may take possession upon making an offer to purchase and by depositing the amount of such offer with the clerk of the district court of the county wherein the right of way is located. The clerk shall immediately notify the owner of such deposit. The owner may thereupon appeal to the court in the manner provided by law. . . ." [Emphasis added.] N.D. Const. Art. I, § 16.

Section 32–15–01(2), N.D.C.C., provides in pertinent part that "[p]rivate property shall not be taken or damaged for public use without just compensation *first* having been made to or paid into court for the owner." [Emphasis added.][4] It is undisputed that damages were not paid to Adams until 1984. Furthermore, no mention was made in the damages awarded allowing for interest. "Where, as here, property is taken or damaged for a public use without just compensation having been first made, payment is legally due to the owner as of the date of the taking or damaging of the property, and hence inter-

est should be given from the time when the property is taken or damaged." *Lineburg v. Sandven,* 74 N.D. 364, 21 N.W.2d 808, 814 (1946). Although the property entered and taken or damaged in 1980 may have been the same property condemned in 1984, for which damages were paid, we will not presume that the 1984 damage award was curative of a 1980 trespass or taking.

Chapter 24–05, N.D.C.C., entitled "County Roads," provides the manner in which a county may purchase or condemn a right of way,[5] how damages are ascertained and paid,[6] notification to the landowner,[7] and the process for appeal.[8] Adams does not argue that Golden Valley County failed to follow this statutory procedure with regards to the 1984 condemnation award and the 1985 re-entry and reconstruction by Canterra. He asserts that, as the land was not condemned until four years after the original entry and crossing construction, he has an action in trespass for that original 1980 entry.

Our research leads us to believe that we have not heretofore considered the issue of whether or not an award of compensation for property taken under the right of eminent domain includes damages resulting from prior trespasses, and therefore precludes an independent action for their recovery.[9] Most courts faced with the ques-

---

4. There is no contention here that the county, or Canterra, attempted to gain possession of Adams' property in 1980 through a "quick take" proceeding. In *Johnson v. Wells County Water Resource Bd.,* 410 N.W.2d 525, 528 (N.D.1987), we said:

   "The general objective of § 16 was to overrule case law construing its precursor and thereby make quick take available to the state, its departments, agencies and political subdivisions. We infer no purpose from its text or history that § 16 was intended to overrule traditional legal principles that place control of the exercise of eminent domain in the Legislature. Section 16 makes available to the Legislature the option of quick take. It is not self-executing." [Footnote omitted.]

5. *See* section 24–05–09, N.D.C.C.

6. *See* sections 24–05–10 and 24–05–12, N.D.C.C.

7. *See* section 24–05–11, N.D.C.C.

8. *See* sections 24–05–14 and 24–05–15, N.D.C.C.

9. We have been presented with the issue of trespass where a landowner has sued a condemnor. *See Lang v. Basin Elec. Power Co–op.,* 274 N.W.2d 253 (N.D.1979). In this particular *Lang* case, the Langs sued Basin, alleging that Basin trespassed upon their land. Pursuant to a judgment and order of possession, Basin had obtained an easement for the construction and maintenance of a power transmission line over land belonging to the Langs. The Langs opposed Basin's attempt to begin construction of the transmission line, for which actions Ernest Lang was subsequently found in civil and criminal contempt. The Langs appealed the judgment and order of possession, and this Court ordered a new eminent domain trial because, in the initial proceeding, Basin had failed to give notice of the trial to the Langs in accordance with section 32–15–07, N.D.C.C. *See Basin Electric Power Cooperative v. Lang,* 221 N.W.2d 719 (N.D.1974).

   After the new trial, the Langs filed an action for trespass against Basin, arguing that the initial judgment and order of possession were

tion have, "at the very least, recognized that the condemnation award does not necessarily include damages for prior trespasses, . . . and that the award . . . does not bar an action for the prior trespass, unless trespass damages were in fact litigated." Annot., *Condemnation—Suit For Prior Trespass*, 33 A.L.R.3d 1132, 1134 (1970).[10]

Adams refers to *Grainland Farms v. Arkansas Louisiana Gas*, 11 Kan.App.2d 402, 722 P.2d 1125 (1986), as supporting his position that he is entitled to damages for trespass separate from the condemnation award from Golden Valley County. In *Grainland Farms*, a pipeline company strayed from its right-of-way and installed a pipeline and a tie-in valve on the plaintiff's property. The property upon which the pipeline had been mistakenly installed was condemned and damages awarded to the landowner, which he accepted. The landowner then brought a trespass action against the pipeline company, claiming actual and punitive damages. The district court granted the pipeline company's motion for summary judgment and the land-

owner appealed, contending that an independent action for damages arising out of a trespass is not precluded as a matter of law, and that the condemnation award did not, in fact, include damages for the intrusion on its property eight months prior to commencement of the condemnation proceeding.

Although the appellate court affirmed the grant of summary judgment because the record failed to support a claim for any damages which would not have been included in the condemnation award, it concluded that the district court had erred in holding that the condemnation award precluded the bringing of any trespass action. The court reasoned that:

> "The purpose of the condemnation proceeding is to provide just compensation to the landowner when his property is appropriated for a public use. The measure of damages for the taking is based on the value of the property immediately before and immediately after the taking.[11] [Footnote added.] By contrast, in

---

void, and therefore Basin was liable for trespass. The trial court granted Basin's motion for summary judgment and dismissed the action with prejudice. On appeal, this Court noted that the Langs had taken action pursuant to Rule 60(b), N.D.R.Civ.P., to relieve themselves of the judgment and order of possession and that this action was not taken until after the initial contempt citations were issued. *See Lang v. Basin Elec. Power Co-op., supra*, 274 N.W.2d at 258. That rule specifically provides that a motion thereunder does not affect the finality of a judgment or suspend its operation. We concluded that "the judgment was in force and effect during the time in which the motion to vacate the judgment and order of possession was under consideration." *Lang v. Basin Elec. Power Co-op., supra*, 274 N.W.2d at 258. After filing the motion pursuant to Rule 60(b), N.D.R. Civ.P., the Langs continued to defy the orders of the district court. "To assert that Basin is responsible in tort for the damages the Langs incurred as the result of such defiance may, of itself, be so clearly unwarranted as to be proper ground for a motion for summary judgment on behalf of Basin." *Id.* at 259.

The instant case is distinguishable from *Lang* in that there was no original judgment and order of possession issued for the 1980 entry and crossing construction in this case, whereas there was in *Lang*. Canterra (or Al-Aquitaine) apparently entered Adams' land and constructed the crossing without the authority given under an eminent domain proceeding. Furthermore,

Adams' actions in obstructing the crossing cannot be compared to those of Ernest Lang, *see State v. Lang*, 378 N.W.2d 205 (N.D.1985), because Adams' actions took place *before* any eminent domain proceedings were commenced.

10. Most of the caselaw regarding this issue is ancient, with several exceptions; *see Application of Bubb*, 200 Colo. 21, 610 P.2d 1343 (1980); *Grainland Farms, Inc. v. Arkansas Louisiana Gas Co.*, 11 Kan.App.2d 402, 722 P.2d 1125 (1986); and *Seattle v. Loutsis Investment Co.*, 16 Wash.App. 158, 554 P.2d 379 (1976).

11. In *City of Hazelton v. Daugherty*, 275 N.W.2d 624, 627–28 (N.D.1979), we said that:

> "Although not necessarily an absolute or exclusive standard or method, the general rule for determining the value of property taken under subsection (1) of § 32–15–22, NDCC, is a consideration of the fair market value of such property. [Cites omitted.] This court has defined fair market value in condemnation cases as the highest price property can be sold for in the open market by a willing seller to a willing purchaser, neither acting under compulsion and both exercising reasonable judgment.
>
> \* \* \* \* \* \*
>
> "Subsection (2) of § 32–15–22, NDCC, provides for severance damages, that is, the depreciation in the value of the remainder of a parcel caused by the severance of the remainder from the part taken."

an action for trespass, the plaintiff may be awarded any damages which are the immediate consequence of the trespass. The injured landowner is entitled to receive at least nominal damages, and exemplary or punitive damages may be recovered in an action for trespass when the trespasser has been guilty of malice, wantonness, or oppression. It is certainly possible that a landowner may suffer damages from a trespass which would not be compensable as part of a taking." [Cites omitted.] *Grainland Farms v. Arkansas Louisiana Gas, supra,* 722 P.2d at 1129.

We conclude that a condemnation award does not necessarily include damages for trespass, and that a landowner is not precluded from bringing a separate action for trespass, despite the fact that condemnation damages have been awarded and accepted.

There are other issues which must be decided on remand for trial. Canterra argues that Al–Aquitaine, its predecessor-in-interest, could not be a trespasser in 1980 as it was acting under authority given to it by the county, and cites *Johnson v. Steele County,* 240 Minn. 154, 60 N.W.2d 32 (1953), as support. In *Johnson,* a landowner brought an action in nuisance and trespass against the county, alleging that the county had caused a drainage ditch that ran through the plaintiff's property to be widened, deepened, charged, and altered, even though the county only had the authority to repair the ditch. The action for damages was allowed against the county. An individual defendant, Hosfield, however, was found not liable. Hosfield had been instructed to draw up the necessary plans and specifications to make the ditch function efficiently. He had also supervised the actual ditch construction. The court found that "[i]n neither capacity is he liable as a trespasser. Although the county may have been exceeding its authority in ordering the work, there is no allegation

that Hosfield exceeded the authority given him by the county." *Johnson v. Steele County, supra,* 60 N.W.2d at 39. The court stated that "[p]ublic officials and employees are not held personally liable for acts done honestly in the exercise of the discretion which the law gives them." *Id.* 60 N.W.2d at 39–40.

There are several reasons why the holding of *Johnson* does not necessarily shield Canterra from liability for trespass, other than the fact that the case is not recent and is from another jurisdiction. Read narrowly, *Johnson* refers only to the liability of "public officials and employees." There has been no showing that Canterra was either a public official or employee of Golden Valley County. Further, Canterra neither admits nor denies that it was acting as an agent of Golden Valley County, asserting that it entered upon the land pursuant to authority given to it by the county.

An agent is not necessarily shielded from liability merely as a consequence of his relationship to a principal. One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency when his acts are wrongful in their nature. *See* section 3–04–02(3), N.D.C.C. The intentional tort of trespass qualifies as a wrongful act.

Although Canterra's relationship with Golden Valley County may or may not have been analogous to that of agent/corporation, what we said in *Wills v. Schroeder Aviation, Inc.,* 390 N.W.2d 544, 547 (N.D. 1986), may be pertinent. We said that "[a] corporate agent cannot shield himself from personal liability for a tort he personally commits or participates in by hiding behind the corporate entity; if he is shown to have been acting for the corporation, the corporation also may be liable, but the individual is not thereby relieved of his own responsibility." *Wills v. Schroeder Aviation, Inc., supra,* 390 N.W.2d at 547.[12]

---

**12.** We have held that an independent action for trespass may be brought against a master although the servant, who acted on behalf of the master, has been released from all claims aris-

ing out of the trespass. *See Zimprich v. North Dakota Harvestore Systems, Inc.,* 419 N.W.2d 912 (N.D.1988).

The summary judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Statutory costs on appeal should be awarded to Adams.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.