Wally **KLINDTWORTH** and Kim Klindtworth, Plaintiffs and Appellees,

v.

Bruce **BURKETT**, Defendant and Appellant.

**Civ. No. 910065.**

Supreme Court of North Dakota.

Nov. 12, 1991.

Ken. R. Sorenson, Asst. Atty. Gen., Bismarck, for defendant and appellant.

Traynor, Rutten & Traynor, Devils Lake, for plaintiffs and appellees; argued by Thomas E. Rutten.

ERICKSTAD, Chief Justice.

Bruce Burkett appeals from the order of the District Court for Ramsey County denying his motion for summary judgment of dismissal of the Klindtworths' complaint, based on qualified, statutory, and sovereign immunity. We dismiss the appeal.

All facts related in this opinion are from testimony given in conjunction with depositions.

Burkett, a game warden for the State of North Dakota, testified that on the morning of November 13, 1989, he went to the residence of the Klindtworths to investigate a reported shooting of a deer within city limits; that a neighbor of the Klindtworths had telephoned Burkett and told him that one of Wally Klindtworth's sons had just shot a deer; and that the caller indicated that a red pickup truck had left the Klindtworth residence sometime shortly after the shooting.

Burkett further testified that, upon arriving at the Klindtworth residence, he saw footprints in the snow coming from the residence, and that he saw a buck deer lying outside the fence of the Klindtworth residence. He also testified that, upon further investigation, he determined that the shot that killed the deer was fired in the direction of other homes, and that from outside the Klindtworth residence he was able to observe a high-powered rifle inside the residence through a clear sliding glass patio door. After noticing the rifle, Burkett testified that he went to the patio door and got down on his knees to look at it. According to Burkett he next knocked on the patio door and, after receiving no response, he opened the door and yelled something to the effect, "Is anybody there." What transpired subsequently is considerably more in dispute.

According to Burkett, Kim Klindtworth came to the door and he questioned her, while he remained outside of the door.

Burkett asserts that he only entered the house after Kim had agreed to call her boyfriend, the apparent owner of the red pickup, so he could talk to him about the shooting. After talking to Kim's boyfriend, Kevin Sackenreuter, on the telephone, Burkett testified that he then took down the serial number of the rifle leaning by the door and left the house.

Kim Klindtworth testified that as soon as Burkett saw her he told her to get her brother Chad. After telling Burkett that Chad was away at college, Kim testified that Burkett simply walked into the house and said, "Get Chad's ass down here right now." According to Kim, Burkett walked into the house and proceeded to question her and take down the serial number of the rifle, all without any permission on her part. Kim testified that it was only after Burkett had entered the house, questioned her, and had taken down the serial number that she told Burkett she would call her boyfriend Kevin.

In November of 1989, Wally and Kim Klindtworth initiated this action against Burkett, alleging that Burkett's conduct amounted to an invasion of their property and violated their rights secured under the federal and state constitutions. An answer denying the complaint, and the defense of statutory immunity, was apparently made. The Klindtworths subsequently filed an amended complaint in February of 1990. Again an answer denying the complaint and raising the defense of statutory immunity was made. After the depositions of Burkett and Wally, Kim, and Troy Klindtworth were taken, Burkett moved the district court for summary judgment of dismissal of the amended complaint based on statutory immunity. The motion for summary judgment was denied. Thereafter, the Klindtworths moved the district court to allow them to amend their complaint to include a cause of action under 42 U.S.C. § 1983. The district court allowed the motion to amend the complaint. Burkett then moved the district court for partial summary judgment on the federal claims based on qualified and sovereign immunity.

The district court denied the motion. Lastly, a third motion for summary judgment of dismissal of the second amended complaint based on sovereign, qualified, and statutory immunity was brought by Burkett in November of 1990. The district court denied Burkett's third motion for summary judgment. It is from this third order denying summary judgment of dismissal that Burkett appeals.

■ As this appeal is not from a final judgment but is from an order, our first inquiry must be whether or not we have jurisdiction to entertain this appeal. Before this Court will hear an appeal of an intermediate order, the order must meet two separate and distinct jurisdictional provisions. *Barth v. Schmidt*, 472 N.W.2d 473, 474 (N.D.1991). First, the order appealed from must satisfy one of the enumerated bases for review of section 28–27–02, N.D.C.C. Second, Rule 54(b), N.D.R.Civ.P., must be complied with. *Gast Construction Company, Inc. v. Brighton Partnership*, 422 N.W.2d 389, 390 (N.D.1988).

■ As Burkett candidly admits, it is generally recognized by this Court that an order denying a motion for summary judgment is not one of the orders reviewable (meaning appealable) under section 28–27–02, N.D.C.C. *Herzog v. Yuill*, 399 N.W.2d 287, 292–93 (N.D.1987); *Gillan v. Saffell*, 395 N.W.2d 148, 149 (N.D.1986); *Skoog v. City of Grand Forks*, 301 N.W.2d 404 (N.D.1981).[1] However, Burkett argues

that in light of the special nature of an immunity defense, this Court should allow this appeal.

Burkett points out that the United States Supreme Court in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), held that a denial of a motion for summary judgment based on qualified immunity in a § 1983 action was immediately appealable under 28 U.S.C. § 1291. The Court in *Mitchell* explained:

> "*Harlow* [*v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)] thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."

*Mitchell v. Forsyth*, 472 U.S. at 526, 105 S.Ct. at 2815. However, a distinguishing feature is that the Court in *Mitchell* was construing the appellate jurisdiction provision for the federal courts of appeals found in 28 U.S.C. § 1291 and we are required to construe our state statute and our court rule in light of our previous decisions. Although somewhat elusive, qualified immunity is recognized by the United States Supreme Court to exist.[2] Thus, when a state court hears a federal § 1983 cause of action, the question of qualified immunity

---

1. A denial of a motion to dismiss a cause of action is also generally not appealable under 28–27–02. *See Blue Arm v. Volk*, 254 N.W.2d 427 (N.D.1977), where the motion to dismiss was based on defective service of process; *Security National Bank v. Bothne*, 56 N.D. 269, 217 N.W. 148 (1927), where the motion was that the plaintiff's cause of action didn't give a right to attachment and that, thus, the court was without jurisdiction over the parties or the subject matter of the action; *Nordenstrom v. Swedberg*, 123 N.W.2d 285 (N.D.1963), where the motion to dismiss was based on an affirmative defense that the contract in question called for arbitration prior to any suit.

2. 42 U.S.C. § 1983 has been held to incorporate general principles of immunity law as it existed at the time it was enacted. In *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271

(1986), the Court, while discussing these principles, said:

> "Although the statute on its face admits of no immunities, we have read it 'in harmony with general principles of tort immunities and defenses rather than in derogation of them.' *Imbler v. Pachtman*, 424 U.S. 409, 418 [96 S.Ct. 984, 989, 47 L.Ed.2d 128] (1976). Our initial inquiry is whether an official claiming immunity under § 1983 can point to a common-law counterpart to the privilege he asserts. *Tower v. Glover*, 467 U.S. 914 [104 S.Ct. 2820, 81 L.Ed.2d 758] (1984). If 'an official was accorded immunity from tort actions at common law when the Civil Rights Act was enacted in 1871, the Court next considers whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions.' *Id.*, at 920 [104 S.Ct. at 2824–25]. Thus, while we look to the

common law for guidance, we do not assume that Congress intended to incorporate every common-law immunity into § 1983 in unaltered form."

*Malley,* 475 U.S. at 339–40, 106 S.Ct. at 1095–96. In *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the United States Supreme Court, while discussing the scope of a municipality's immunity under § 1983, said:

"Because the question of the scope of a municipality's immunity from liability under § 1983 is *essentially one of statutory construction,* [emphasis added] *see Wood v. Strickland,* 420 U.S. 308, 314, 316 [95 S.Ct. 992, 997, 998, 43 L.Ed.2d 214] (1975); *Tenney v. Brandhove,* 341 U.S. 367, 376 [71 S.Ct. 783, 788, 95 L.Ed. 1019] (1951), the starting point in our analysis must be the language of the statute itself. *Andrus v. Allard,* 444 U.S. 51, 56 [100 S.Ct. 318, 322, 62 L.Ed.2d 210] (1979); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756 [95 S.Ct. 1917, 1935, 44 L.Ed.2d 539] (1975) (Powell, J., concurring). By its terms, § 1983 'creates a species of tort liability that on its face admits of no immunities.' *Imbler v. Pachtman,* 424 U.S. 409, 417 [96 S.Ct. 984, 989, 47 L.Ed.2d 128] (1976). Its language is absolute and unqualified; no mention is made of any privileges, immunities, or defenses that may be asserted. Rather, the Act imposes liability upon *'every person'* who, under color of state law or custom, 'subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'

\* \* \* \* \* \*

"However, notwithstanding § 1983's expansive language and the absence of any express incorporation of common-law immunities, we have, on several occasions, found that a tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that 'Congress would have specifically so provided had it wished to abolish the doctrine.' *Pierson v. Ray,* 386 U.S. 547, 555 [87 S.Ct. 1213, 1218, 18 L.Ed.2d 288] (1967). Thus in *Tenney v. Brandhove, supra,* after tracing the development of an absolute legislative privilege from its source in 16th–century England to its inclusion in the Federal and State Constitutions, we concluded that Congress 'would [not] impinge on a tradition so well grounded in history and reason by covert inclusion in the general language' of § 1983. 341 U.S., at 376 [71 S.Ct., at 788]."

*Id.,* at 635, 637, 100 S.Ct. at 1407, 1408. In *Tower v. Glover,* 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984), the United States Supreme Court, while noting that public defenders enjoyed no immunity under § 1983 actions, said:

"On its face § 1983 admits no immunities. But since 1951 this Court has consistently recognized that substantive doctrines of privilege and immunity may limit the relief available in § 1983 litigation. See *Imbler v. Pacht-*

*man,* 424 U.S. 409, 417–419 [96 S.Ct. 984, 988–90, 47 L.Ed.2d 128] (1976); *Pulliam v. Allen,* 466 U.S. 522 [104 S.Ct. 1970, 80 L.Ed.2d 565] (1984). The Court has recognized absolute § 1983 immunity for legislators acting within their legislative roles, *Tenney v. Brandhove,* 341 U.S. 367 [71 S.Ct. 783, 95 L.Ed. 1019] (1951), for judges acting within their judicial roles, *Pierson v. Ray,* 386 U.S. 547, 554–555 [87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288] (1967), for prosecutors, *Imbler v. Pachtman, supra,* and for witnesses, *Briscoe v. LaHue,* 460 U.S. 325 [103 S.Ct. 1108, 75 L.Ed.2d 96] (1983), and has recognized qualified immunity for state executive officers and school officials, see *Scheuer v. Rhodes,* 416 U.S. 232 [94 S.Ct. 1683, 40 L.Ed.2d 90] (1974); *Wood v. Strickland,* 420 U.S. 308 [95 S.Ct. 992, 43 L.Ed.2d 214] (1975).

"Section 1983 immunities are 'predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it.' *Imbler v. Pachtman, supra* [424 U.S.], at 421 [96 S.Ct., at 990]; *Pulliam v. Allen, supra* [466 U.S.], at 529 [104 S.Ct., at 1974]. If an official was accorded immunity from tort actions at common law when the Civil Rights Act was enacted in 1871, the Court next considers whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions. See *Imbler v. Pachtman, supra* [424 U.S.], at 424–429 [96 S.Ct., at 992–94]; *Briscoe v. LaHue, supra* [460 U.S.], at 335–337 [103 S.Ct., at 1115–16]. Using this framework we conclude that public defenders have no immunity from § 1983 liability for intentional misconduct of the type alleged here.

"No immunity for public defenders, as such, existed at common law in 1871 because there was, of course, no such office or position in existence at that time. The first public defender program in the United States was reportedly established in 1914.

\* \* \* \* \* \*

"Finally, petitioners contend that public defenders have responsibilities similar to those of a judge or prosecutor, and therefore should enjoy similar immunities. The threat of § 1983 actions based on alleged conspiracies among defense counsel and other state officials may deter counsel from engaging in activities that require some degree of cooperation with prosecutors—negotiating pleas, expediting trials and appeals, and so on. Ultimately, petitioners argue, the State's attempt to meet its constitutional obligation to furnish criminal defendants with effective counsel will be impaired. At the same time, the federal courts may be inundated with frivolous lawsuits.

"Petitioners' concerns may be well founded, but the remedy petitioners urge is not for us to adopt. We do not have a license to establish immunities from § 1983 actions in the interests of what we judge to be sound public policy. It is for Congress to determine wheth-

inherently arises. The issue of whether or not this Court has jurisdiction to review an intermediate order in a § 1983 action, however, is a separate inquiry.[3]

At the time 42 U.S.C. § 1983 was enacted, and continuing through today, appellate jurisdiction of state courts was and is pri-

er § 1983 litigation has become too burdensome to state or federal institutions and, if so, what remedial action is appropriate."
*Id.,* at 920–921, 922–923, 104 S.Ct. at 2824–26.

Qualified immunity has been held to apply to law enforcement officials sued under § 1983. *See Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288, 296 (1967). In *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), while discussing when an officer is or is not qualifiedly immune, the United States Supreme Court said:

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, *Harlow,* 457 U.S., at 819 [102 S.Ct., at 2739], assessed in light of the legal rules that were 'clearly established' at the time it was taken, *id.,* at 818 [102 S.Ct., at 2738].

"The operation of this standard, however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow.* Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy 'the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties,' by making it impossible for officials 'reasonably [to] anticipate when their conduct may give rise to liability for damages.' *Davis,* [*v. Scherer,* 468 U.S. 183] *supra* at 195[, 104 S.Ct. 3012 at 3019, 82 L.Ed.2d 139] [1984]. *It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:*

marily a creature of statute. Furthermore, it has consistently been held that there is no general constitutional right to an appeal. *Abney v. United States,* 431 U.S. 651, 655, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).[4] *See also Lindsey v. Normet,* 405 U.S. 56, 77, 92 S.Ct. 862, 876, 31 L.Ed.2d 36

*The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell, supra* [472 U.S.], *at 535, n. 12* [105 S.Ct., at 2820]; *but it is to say that in the light of pre-existing law the unlawfulness must be apparent.* [Emphasis added.] *See, e.g., Malley, supra* [475 U.S.], *at 344–345* [106 S.Ct., at 1097–1098]; *Mitchell, supra* [472 U.S.], *at 528* [105 S.Ct., at 2816]; *Davis, supra* [468 U.S.], *at 191, 195* [104 S.Ct., at 3017, 3019]."
*Id.,* at 639–640, 107 S.Ct. at 3038–3039.

**3.** We note that there is some disagreement among state courts over the effect *Mitchell* has on state court appellate procedure. Some states such as Minnesota have accepted the reasoning of the decision in construing their own appellate jurisdictional provision, or rule, without deciding whether or not the decision would mandate such a result. *Anderson v. City of Hopkins,* 393 N.W.2d 363, 364 (Minn.1986). *See also, Robinson v. Beaumont,* 291 Ark. 477, 725 S.W.2d 839, 842 (1987); *Breault v. Chairman of the Board of Fire Commissioners of Springfield,* 401 Mass. 26, 513 N.E.2d 1277 (1987). The Oklahoma Supreme Court concluded that *Mitchell* was a mandate to the state courts but noted that the Supremacy Clause could not create jurisdiction in a state appellate court where it did not otherwise exist. Thus the Oklahoma Court concluded that although an appeal could not be maintained it would exercise its original jurisdiction (*i.e.,* by granting a writ of prohibition). *McLin v. Trimble,* 795 P.2d 1035, 1038–1040 (Okl.1990). Lastly, some courts have simply rejected the proposition that *Mitchell* has any effect on state court appellate procedure. *See Noyola v. Flores,* 740 S.W.2d 493 (Tex.App.— Corpus Christi 1987); *Ohio Civil Service Employees Association v. Moritz,* 39 Ohio App.3d 132, 529 N.E.2d 1290 (1987).

**4.** The United States Supreme Court decision in *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), held that a denial of a motion to dismiss based on double jeopardy was immediately appealable under 28 U.S.C. § 1291. The Court in *Abney* noted that the Double Jeopardy Clause of the Fifth Amendment protected against the "risk" of double conviction as well as double conviction in fact. *Abney,* 431 U.S. at 661, 97 S.Ct. at 2041. As with

(1972). Accordingly, we do not believe *Mitchell* governs our action in this case.

 To be sure, the Supremacy Clause of the United States Constitution mandates that federal law remain paramount to any state law which conflicts with federal law in § 1983 actions brought in state court. For example, the United States Supreme Court in *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), when reviewing the application of a state notice-of-claim statute, said:

"Because the notice-of-claim statute at issue here conflicts in both its purpose and effects with the remedial objectives of § 1983, and because its enforcement in such actions will frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court, we conclude that the state law is pre-empted when the § 1983 action is brought in state court."

*Felder,* 487 U.S. at 138, 108 S.Ct. at 2306–07. The *Felder* Court went on to say that:

"Just as federal courts are constitutionally obligated to apply state law to state claims, *see Erie, supra* at 78–79 [*R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817 at 822–823, 82 L.Ed. 1188 (1938) ], so too the Supremacy Clause imposes on state courts a constitutional duty 'to proceed in such a manner that all the substantial rights of the parties under controlling federal law [are] protected.' *Garrett v. Moore–McCormack Co.,* 317 U.S. 239, 245 [63 S.Ct. 246, 251, 87 L.Ed. 239] (1942)."

*Felder,* 487 U.S. at 151, 108 S.Ct. at 2313. However, the first and crucial issue in this case is whether or not this Court should entertain this appeal. It is the constitutional and statutory law of this state which creates and defines the jurisdiction of this Court. The Supremacy Clause of the United States Constitution alone cannot create jurisdiction in this Court when it does not otherwise exist. *See generally F.E.R.C. v. Mississippi,* 456 U.S. 742, 773 n. 4, 102 S.Ct. 2126, 2145 n. 4, 72 L.Ed.2d 532, 556 n. 4 (1982) (Powell, J. concurring in part and dissenting in part).

Thus, although this Court may take notice of *Mitchell* when construing the provisions granting appellate jurisdiction to this Court, the provisions of section 28–27–02, N.D.C.C., and rule 54(b), N.D.R.Civ.P., dictate the outcome.[5]

Section 28–27–02, N.D.C.C., provides:

"*28–27–02. What orders reviewable.* The following orders when made by the court may be carried to the supreme court:

---

*Mitchell,* there are differing views as to the effect *Abney* has on state court appellate procedure. *See e.g., Nalbandian v. Superior Court,* 163 Ariz. 126, 786 P.2d 977 (App.1989) (holding that appellate review was mandated by *Abney,* but that a petition for a special action was the appropriate vehicle for such review); *State v. Joseph,* 92 N.C.App. 203, 374 S.E.2d 132 (1988) (holding that *Abney* created no right of appellate review). *See also State v. Milenkovich,* 236 Neb. 42, 458 N.W.2d 747, 750 (1990).

**5.** Under the federal scheme, an order denying a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine first announced in *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We first noted in *Rogelstad v. Farmers Union Grain Terminal Association, Inc.,* 224 N.W.2d 544, 546 (N.D.1974), that doctrines such as the collateral order doctrine could not be an independent basis for appeals to this Court. In *State v. LaFontaine,* 293 N.W.2d 426 (N.D.1980), while discussing *Cohen* in part, we said:

"The United States Supreme Court where, unlike North Dakota, appeals are not a matter of right, has said in a civil case that an order is appealable 'because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it.' *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 546–547, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949). The same principle has been said to be applicable to federal criminal cases. *See United States v. Fiumara,* 605 F.2d 116, 117 (3rd Cir.1979), which refers to an exception to the rule of finality under 28 U.S.C. § 1291 that permits appeals when the right asserted is 'too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.' Neither *Cohen v. Beneficial Loan Corp.,* nor *United States v. Fiumara* has application to appeals to this court. We must therefore independently determine, under North Dakota Law, whether or not ... [it] permits this appeal."

*LaFontaine,* 293 N.W.2d at 427.

1. An order affecting a substantial right made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken;
2. A final order affecting a substantial right made in special proceedings or upon a summary application in an action after judgment;
3. An order which grants, refuses, continues, or modifies a provisional remedy, or grants, refuses, modifies, or dissolves an injunction or refuses to modify or dissolve an injunction, whether such injunction was issued in an action or special proceeding or pursuant to the provisions of section 35–22–04, or which sets aside or dismisses a writ of attachment for irregularity;
4. An order which grants or refuses a new trial or which sustains a demurrer;
5. An order which involves the merits of an action or some part thereof;
6. An order for judgment on application therefor on account of the frivolousness of a demurrer, answer, or reply; or
7. An order made by the district court or judge thereof without notice is not appealable, but an order made by the district court after a hearing is had upon notice which vacates or refuses to set aside an order previously made without notice may be appealed to the supreme court when by the provisions of this chapter an appeal might have been taken from such order so made without notice, had the same been made upon notice."

Burkett asserts that this Court has jurisdiction to hear this appeal under subsections (1) and (5) of section 28–27–02, N.D.C.C. This Court has had the opportunity to pass on the meaning of subsections (1) and (5) on a number of occasions. *See generally Blue Arm v. Volk,* 254 N.W.2d 427 (N.D.1977); *Nordenstrom v. Swedberg,* 123 N.W.2d 285 (N.D.1963); *Schaff v. Kennelly,* 69 N.W.2d 777 (N.D.1955). In *Schaff,* we noted that under subsection (1) it is not enough that an order affects a substantial right. The order must additionally, in effect, determine the action and so operate as to prevent a judgment from which an appeal can be taken. *Schaff,* 69 N.W.2d at 780. With respect to subsection (5) the court in *Schaff* noted that an order cannot be appealable, unless it *finally* determines some positive legal right and that, where an order leaves the issue undetermined and remaining before the court, it does not involve the merits. *Id.*

■ In this case, the issue of whether or not Burkett is entitled to qualified immunity has not been finally determined in all aspects. A determination that summary judgment is inappropriate because the plaintiff has alleged a violation of clearly established law, and has brought forth sufficient evidence to support such an allegation in resistance to the motion, thus raising an issue of a material fact, is not the same as a determination that the defendant is not entitled to qualified immunity.[6] The issue of qualified immunity cannot always be determined through the summary judgment mechanism. A denial of a motion for summary judgment does not in effect determine the action preventing a judgment from which an appeal might be taken, nor does it finally determine the merits or some part thereof. Therefore, the order is not appealable under section 28–27–02, N.D.C.C.

■ Although we have confined our discussion to that of the issue of qualified immunity, we conclude that an order denying summary judgment based on statutory immunity is likewise nonappealable. Nothing in section 32–12.1–15, N.D.C.C., nor case law, indicates a contrary result. Section 32–12.1–15(2), provides:

"2. No employee of the state may be held liable in the employee's personal

---

**6.** When a court is faced with a motion for summary judgment based on qualified immunity, the court must first determine whether or not the alleged conduct of the defendant was violative of "clearly established" law. If found to be violative of clearly established law, and the defendant claims to have engaged in other conduct not violative of clearly established law, then discovery may be necessary before a motion for summary judgment can be resolved. *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987).

capacity for actions or omissions occurring within the scope of the employee's employment unless such actions or omissions constitute reckless or grossly negligent conduct, malfeasance, or willful or wanton misconduct."

As with qualified immunity, a denial of a summary judgment based on statutory immunity does not finally determine the issue. Denying the motion does not amount to a determination that the defendant is not entitled to statutory immunity. What the actions of the state employee were and whether or not they were willful, wanton, or reckless are generally questions of fact.

Construing this action as one against Burkett in his individual capacity,[7] when sovereign immunity would not be applicable, *see Kristensen v. Strinden*, 343 N.W.2d 67 (N.D.1983); *see also Hafer v. Melo et al,* — U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), we need not consider whether or not a denial of a motion for summary judgment based on sovereign immunity would be immediately appealable under section 28–27–02, N.D.C.C. It should also be noted that the order denying this motion for summary judgment of dismissal of the complaint is unappealable due to the lack of a Rule 54(b), N.D.R.Civ.P., order.

In summary, we hold that a denial of a motion for summary judgment based on qualified immunity and statutory immunity under section 32–12.1–15(2), N.D.C.C., is not appealable under section 28–27–02, N.D.C.C. Also, as this action is against Burkett in his individual capacity, we need not address whether or not a denial of a motion for summary judgment for dismissal based on sovereign immunity comes within section 28–27–02, N.D.C.C. Thus, Burkett's appeal is dismissed.

GIERKE, VANDE WALLE and LEVINE, JJ., concur.

MESCHKE, J., concurs in the result.

---

**7.** During oral argument, counsel for the Klindtworths, responding to a question, stated that the action was against Burkett in his "individual" capacity.